Helen F. Tanner, Appellee, v. The Prudential Insurance Company of America, Appellant.

Gen. No. 37,985.

Opinion filed December 30, 1935.

HOYNE, O'CONNOR & RUBINKAM, of Chicago, for appellant; NATHANIEL RUBINKAM and WILLIAM S. ALLEN, of Chicago, of counsel.

CASSELS, POTTER & BENTLEY, of Chicago, for appellee; RALPH F. POTTER, CLAUD D. RABER and E. DOUGLAS SCHWANTES, all of Chicago, of counsel.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

This is an appeal from a judgment for $5,625, entered by the superior court on the verdict of a jury against defendant, The Prudential Insurance Company of America, in an action brought by plaintiff, Helen F. Tanner, the beneficiary named in an insurance policy issued by defendant on the life of her husband, Herbert E. Tanner.

Plaintiff's declaration alleged that October 15, 1930, the defendant issued and delivered to her husband,

Herbert E. Tanner, a policy insuring his life for $5,000; that the insured died December 25, 1931, while the policy was in full force and effect; and that defendant disclaimed all liability on the policy except for the return of the premiums paid.

Defendant contends that the policy was issued by it pursuant to insured's application, in which he represented that his answers to the questions therein were complete and true; that the undisputed evidence discloses that he was guilty of fraud and misrepresentation in his answers to certain questions contained in his application; that, if defendant at the time of insured's application had known the true facts concerning his condition of health and his previous treatment by physicians, it would not have issued the policy; and that, because it was induced to issue the policy by reason of insured's fraud, it cannot be held liable except for the premiums paid, which have been tendered to and refused by plaintiff.

Above Tanner's signature on that portion of his application for insurance captioned "Declarations Made To The Medical Examiner," he declared "that all of the statements and answers to the above questions are complete and true and I agree that they shall form a part of the contract of insurance applied for."

Among the questions and answers referred to were the following:

"6. Have you ever

"(d) Had medical or surgical treatment in a hospital or sanitarium?

"No.

"9. On what dates and for what complaints have you been attended by a physician during the past three years?

"No."

Plaintiff insists that the above questions, to which the respective answers were made, are ambiguous; that

the answers were in fact true responses to the questions asked; that Tanner was justified in believing that his visits to the out-patient clinic of the hospital did not constitute "medical or surgical treatment in a hospital or sanitarium"; that he was justified in believing and considering that being "attended by a physician" meant attended in his home; that he had a right, in view of Dr. Katz's statement to him in August, 1930, that his eye was normal, to consider his ailment trivial; that he was justified in view of the previous questions in the application as to "serious illness," "serious injury" and "surgical operation" in believing that the above questions pertained only to matters of a serious nature; that, if there were any inaccuracies in Tanner's answers, they were immaterial to the risk; that the answers were not knowingly made with intent to deceive or defraud defendant; and that, in any event, the alleged falsity of Tanner's answers, his knowledge with respect thereto, his intent to defraud defendant and the materiality of his representations were all questions of fact for the jury.

Dr. John Soukup, the medical examiner for defendant company, testified that he asked Tanner the questions contained in the application and that, after he had written thereon the answers to the respective questions as made to him by insured, Tanner signed the application October 4, 1930.

Dr. Dewey Katz testified in defendant's behalf that he specialized in diseases of the eye and was connected with the University of Chicago clinic at the Billings Memorial Hospital; that he first saw Tanner at that clinic January 9, 1930, and saw him 16 times thereafter before insured signed the application; that, when he first examined him, his left eye protruded abnormally and he complained of double vision; that the patient's symptoms indicated the possibility of a tumor, an inflammatory process or a generalized condition such as

toxic goiter; that Tanner was referred to the clinic at the Billings Memorial Hospital by Dr. Boettcher, who had seen him previously; that "the X-rays made of this man's eye" were essentially negative; that he was one of the attending physicians at the time of Tanner's death, and, in his opinion, the cause of his death was generalized sarcomatosis; that from subsequent events it was his opinion that the cancerous condition started "in the orbit and thereafter went through the blood-stream into various organs in the abdominal cavity"; that it was his opinion that this condition "began approximately the latter part of 1929"; that he operated and removed Tanner's left eye June 26, 1931, and at that time the eye showed a cancerous condition; that on the occasion of insured's first visit to the hospital he checked up the amount of protrusion of the left eye, "performed the usual ophthalmological examination or eye examination," and advised the taking of an X-ray picture; and that insured was given 10 X-ray treatments at the hospital at his direction, three each in the months of January, February and March, and one in August, 1930.

Dr. Katz testified upon cross-examination that on the occasion of Tanner's first visit to the clinic the witness did not tell him that there was anything seriously the matter with him; that on one of insured's visits to the clinic he removed a small part of the tissue behind the eye to examine it and the examination of such tissue did not indicate cancer; that prior to November 1, 1930, the only place that he saw Tanner was in the clinic of the eye department, which was a subdivision of the hospital; that the protrusion of his eyeball subsided following treatment and that there was no protrusion in the summer of 1930; that then his eye was apparently all right and his conclusion was that whatever had caused the trouble had disappeared; and that at that time he told Tanner that "the eye looked perfectly normal and was like a normal eye."

Dr. Garwood C. Richardson, called by defendant as an expert witness, testified that there are different types of cancer, some of slow development and others of more rapid development. He was unable to give a definite opinion as to whether or not the cancerous condition that resulted in Tanner's death might or might not have existed prior to the time that he made the application for insurance.

Plaintiff offered no medical testimony as to the condition of insured's health prior to October 4, 1930, when he signed the application upon which the insurance policy was issued to him October 15, 1930. The only testimony offered by her was that of lay witnesses to the effect that Tanner was apparently in good health prior to and at the time he signed the application, and that his reputation for truth and veracity was good.

Tanner died as a result of cancer about 14 months after the policy was issued to him. His left eye was removed approximately six months prior to his death and a cancerous condition of the eye existed at the time of its removal. Although Dr. Katz testified that it was his opinion from subsequent events that the condition that resulted in Tanner's death "began approximately the latter part of 1929," there is no evidence in the record that Tanner knew when he signed the application October 4, 1930, that he was suffering from cancer. It is reasonable to infer from the evidence that he had no such knowledge then inasmuch as Dr. Katz told him in August, 1930, after treating him for approximately seven months, that "the eye looked perfectly normal and was like a normal eye."

Therefore, for the purpose of determining the issues presented by this appeal it is necessary to consider only the answers to the questions in the application heretofore set forth. The answers to these questions were obviously untrue since the undisputed evidence discloses that Tanner received medical treatment, in-

cluding 10 X-ray treatments, at the Billings Memorial Hospital on 17 occasions during the period from January 9, 1930, to August 17, 1930, the treatment on the latter date having been received less than two months prior to October 4, 1930, when he answered the questions and signed the application for the insurance.

An applicant for life insurance is not exempted from the operation of the ordinary rules of common honesty and good faith in his dealings with the company in procuring a policy. (*Western & Southern Life Ins. Co. v. Tomasun,* 358 Ill. 496.) Even the most unsophisticated person must know that in answering the questions contained in an application for life insurance and submitting the application containing such answers, he is furnishing the data on the basis of which the company will decide whether by issuing a policy it wishes to insure him. (*Stipcich v. Metropolitan Life Ins. Co.,* 277 U. S. 311.)

Tanner declared that he had not received medical treatment in a hospital, when he had received such treatment, and he stated that he had not been attended by a physician for any complaint during the three years immediately preceding his application for insurance, when he had been so attended and treated 17 times by Dr. Katz over a period immediately preceding the date of his application.

Regardless of whether or not Tanner was afflicted with a cancer when he answered the questions and signed the application on October 4, 1930, and, regardless of whether or not he knew that he was so afflicted, the real question presented for our determination is whether Tanner answered truthfully the questions in his application for insurance as to his previous condition of health and medical history or whether he was guilty of misrepresenting material facts in connection with same.

It must be conceded that an insurance company has the right to decide whether it will accept a risk after

knowing all the true facts. Defendant was denied the right to examine the hospital records as to insured's diseased condition and treatment, as well as his medical history, and it was further denied the right and opportunity to interrogate the physicians who had treated him and with whom he had consulted, because of the concealment by him of his previous condition of health and medical and hospital treatment.

It is idle to urge that the questions were or are ambiguous or that the answers of insured thereto are in any sense true. The language of the questions involved is plain, simple, clear and readily understandable and the answers to same are apparently false. The mere reading of the questions is conclusive of the character of the information sought from the applicant. The contention of plaintiff that Tanner was justified in believing that the questions meant something other than was stated therein in plain language is without merit. That the insured considered his ailments trivial or that plaintiff now considers the questions and answers immaterial can in no sense be controlling.

Even though we assume that insured was honest in making his answers, counsel for plaintiff's argument that the judgment should be sustained on that ground can have no force or effect in view of the latest expression of our Supreme Court in *Western & Southern Life Ins. Co. v. Tomasun, supra,* where the court said at p. 502:

"In an equitable action for the cancellation of an insurance policy upon the ground that misrepresentations had been made as to facts material to the risk, it is not essential that the appellant should have willfully made such misrepresentations knowing them to be false. They will avoid the policy if they are, in fact, false and material to the risk even though made through mistake or in good faith. In *United States Fidelity and Guaranty Co. v. First Nat. Bank,* 233 Ill.

475, we stated this rule in the following language: 'The law is well settled, in its application to insurance contracts, that a misrepresentation of a material fact, in reliance upon which a contract of insurance is issued, will avoid the contract, and it is not essential, in equity, that such a misrepresentation should be known to be false. A material misrepresentation whether made intentionally or knowingly or through mistake and in good faith, will avoid the policy.' The same rule has been applied in many other jurisdictions.''

In *Cross v. Prudential Ins. Co. of America*, 279 Ill. App. 645 (Abst.), which was an appeal from a judgment rendered in an action at law tried before the court and jury, Justice Wilson in delivering the opinion of court, after quoting the foregoing language from the *Tomasun* case, said:

''It is a matter of no importance as to whether or not the answers were made with the intention to deceive. The vital question is as to whether the insurance company had a right to rely upon them as true at the time it issued its policy. The questions and answers pertain to material matters and their falsity must have been known to the applicant inasmuch as the application was signed by him and was also made a part of the policy which he subsequently received.''

It is urged by plaintiff that the falsity of Tanner's answers, his knowledge with respect thereto, his intent to defraud and the materiality of his representations were all questions of fact, which were properly submitted to the jury and resolved in plaintiff's favor. The difficulty with this position is that the verdict was against the manifest weight of the evidence inasmuch as the undisputed evidence shows conclusively that the answers to the questions were false and concerned material facts. It is only necessary to repeat that the law is well settled in its application to insurance contracts that a misrepresentation of a material fact, in reliance

upon which a contract of insurance is issued, will void the contract. (*Western & Southern Life Ins. Co. v. Tomasun, supra; United States Fidelity & Guaranty Co. v. First Nat. Bank of Dundee,* 233 Ill. 475.)

Plaintiff's contention that the only error argued by defendant upon this appeal was the alleged denial by the trial court of defendant's motion to direct a verdict in its favor is without merit. Defendant withdrew its motion made in the trial court to direct a verdict, but under its motion for a new trial, which was denied, it saved for review the question of the insufficiency of the evidence to sustain the judgment below. Most of defendant's brief was directed to a discussion of this proposition.

We are of the opinion that the answers to the questions propounded, as heretofore set forth, were untrue and that they were answers concerning material facts, which, if known to defendant insurance company, could well have caused it to have refused to issue the policy in question.

In view of the fact that insured by signing his application represented such answers to be true, which were in fact untrue, it would serve no good purpose to remand the cause for a new trial. The judgment of the superior court is therefore reversed and judgment entered here against defendant for $287.68 on account of premiums paid on the policy from the date of its issuance with interest thereon, a tender of which amount was made by defendant to plaintiff in the trial court and refused.

*Reversed and judgment here for plaintiff against defendant for $287.68.*

SCANLAN, P. J., and FRIEND, J., concur.