Hazel Walsh, Administratrix of the Estate of Mary White, Deceased, Appellee, v. The Prudential Insurance Company of America, Appellant.

Gen. No. 38,585.

Opinion filed April 22, 1936.

HOYNE, O'CONNOR & RUBINKAM, of Chicago, for appellant; NATHANIEL RUBINKAM and WILLIAM S. ALLEN, of Chicago, of counsel.

ALBERT BRILLIANT, of Chicago, for appellee.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal from a judgment of the municipal court, entered on the verdict of a jury, in favor of the plaintiff in the sum of $334, being the principal and interest on three life insurance policies issued to Mary White, since deceased, by The Prudential Insurance Company of America, the defendant in this cause.

Hazel Walsh, administratrix of the estate of Mary White, the deceased, in her statement of claim alleges that three policies of insurance were issued to Mary White, one being for $90 and the other two being for $108, each making an aggregate amount of $306, and all three policies were dated April 18, 1932; that Mary White died on January 25, 1933, and that notice of death was furnished to the insurance company, but that it has failed to pay the amounts as set forth in the policies.

The defendant in its affidavit of merits states that the policies provide that "This policy shall not take effect . . . if on such date the insured be not in sound health"; that the policies did not take effect because Mary White was not in sound health on April 18, 1932, the date of said policies.

Defendant's affidavit further states that the applicant, at the time the said application was made for the said policies stated her age was, at the next birthday

60 years, but that as a matter of fact she was 62 years of age and that the premium that was paid by the said applicant at the age of 62 years would purchase from the said defendant company insurance in the amount of $255, but defendant denies it is indebted to plaintiff for any amount except for the return of the premiums paid, the same being $37.40, which premiums are again tendered in full satisfaction of all claims whatsoever against this defendant.

Plaintiff's theory of the case is that the policies were issued; that the insured died while they were in force; that since the insured died while the policies were in force, the defendant is liable for the amount of the policies, plus interest.

Defendant's theory of the case is that since the policies sued upon provide that they shall not take effect if the insured, on the date thereof, is not in sound health; that where the evidence shows the insured was, in fact, not in sound health on the date of the policies but that she was afflicted with cancer on and prior to the date of the policies, no liability is assumed by the defendant company under said policies. It is further contended that the evidence also shows that said policies were obtained by fraudulent misrepresentations of material facts and therefore the plaintiff cannot recover thereunder.

Mary White in making her application for the policies on April 14, 1932, stated that she had never been seriously ill; had no physical or mental defect or infirmity; that she had never suffered from gall stones, disease of the gall bladder, liver or kidneys, or cancer. Three policies were issued as we have already stated, one for $90 and two for $108 each; that each policy contained the following clause:

"This policy shall not take effect if the insured die before the date hereof or if on such date the insured

be not in sound health but in either event the premiums paid hereon, if any, shall be returned.''

Mary White entered the Wesley Memorial Hospital on May 8, 1932. Dr. McNealy was her attending physician and examined her on May 8, 1932 and operated on her on May 9, 1932. He removed the left breast and the structures attached to the breast. The breast he removed was subsequently examined and found to be cancerous. Dr. McNealy said he thought it would take a month for the cancer to form.

Dr. Richardson, an expert witness on behalf of defendant, testified that in his opinion the cancer in Mrs. White's breast would take eight months to a year or possibly more to form; that the length of time it takes to develop a cancer is very speculative; that the development of cancer depends upon its type and that there are several types; that swellings of the breast are a common occurrence among women; that some swellings are not cancers; that as a rule it is necessary in order to determine whether a certain swelling is a cancer to submit part of the tissue to a microscopic examination.

Dr. McNealy, a witness on behalf of defendant, testified further that he attended Mary White in 1929; that she went into the hospital about August 27, 1929, and was discharged about September 5th; that the sufferings complained of at that time had not to his knowledge any relation to the sickness that she had come to him about as of May 8, 1932; that he had an occasion to examine her in both instances.

Mrs. Daisy McCormick testified that she had known May White for about 15 years; that prior to April 14, 1932, she visited her home three or four times a week; that Mary White did her housework and went to the store every day; that she did her washing and ironing and cleaned her windows and worked very hard; that

she saw her a few days before she went to the hospital, but that she never made any complaint to her about her physical condition.

Grace Stamm testified that she is the daughter of Mary White, the insured in this case; that prior to her mother's death she was living with her; that her mother had insurance on other members of the family which had been in effect 27 years; that the agent for the company came to their house once a week and he was the same agent who collected on the three policies which her mother had taken out and that the same agent had come to their house about 6 or 8 years before the three policies on her mother's life were issued and that he continued to come and collect the premiums on these three policies after they were issued; that he received the payments from her mother once a week.

In the case of *James v. National Life & Accident Ins. Co.,* 265 Ill. App. 436, it was held:

"A provision in a life insurance policy that 'no obligation is assumed by the Company prior to the date hereof, nor unless on said date the insured is . . . in sound health,' merely means that the applicant must not have contracted a disease between the date of the application and the issuance of the policy, and the provision does not apply to a condition that existed prior to and at the time of the making of the application."

In *Johnson v. Royal Neighbors of America,* 253 Ill. 570, it was said:

"The purpose of a by-law of a benefit society requiring a member to be in sound health at the time the certificate was delivered is to protect the society from liability in consequence of a disease contracted by the member between the time of the application and the delivery of the certificate."

In this case the applications were not attached to the policies and it has been held that in the absence of an

express provision that they are warranties, the question in each case is whether the answers made by the applicant were knowingly false. *Flenner v. Capital Live Stock Ins. Co.*, 217 Ill. App. 529, and cases cited.

In the case of *Joseph v. New York Life Ins. Co.*, 219 Ill. App. 452, at page 466, Mr. Justice O'Connor said:

"From a consideration of the authorities to which we have referred and of many others which we have examined, we think the law is that where it is sought to avoid a policy on the ground that the insured made false answers in his application, the question of the good faith of the applicant in making his answers (in the absence of an express provision that they are warranties) is always a material one. . . .

"While there is some apparent conflict in the language used in the reported opinions, yet we think upon a careful analysis of each case it will be found that there is no real conflict; that the question in each case is whether the answers made by the applicant were knowingly false."

In the case of *Diehl v. Mutual Life Ins. Co.*, 176 Ill. App. 462, at page 465, the court said:

"Representations in an application for insurance made in good faith, even though untrue will not prevent a recovery. To avail as a defense, the defense must aver and prove the representations in an application for insurance are false and that the applicant knew them to be false at the time he made them."

In this case the deceased was suffering from an internal malady, a cancer of the breast. Science has not as yet discovered the means by which a lay person is able to diagnose the presence of cancer and, as may be seen from this record, the learned doctors were unable to ascertain whether or not such a condition existed until after they had operated and a portion of the issue was submitted to a microscopic test. No one knows what causes cancer; no one can give any cure,

for certain types, except the removal of the affected tissue at the early stages of its growth. To say that a lay person was guilty of and should be held liable for misrepresentation because when answering the questions in the application she did not say that she had a cancer, when, as a matter of fact, it was several weeks later before the doctors discovered that cancer existed, would not be justifiable under the law or in harmony with the common experiences of mankind. After acquired knowledge should not be read into the application. One of the learned doctors while on the witness stand stated that a cancer can develop within a month, whilst the other doctor said it would take 10 months or longer to develop.

We do not believe that the statements of the deceased were such a knowing misrepresentation of the facts as would be sufficient to defeat the claim of the plaintiff.

For the reasons herein given the judgment of the municipal court is hereby affirmed.

*Judgment affirmed.*

HALL, P. J., and HEBEL, J., concur.