Edith B. Thompson, Appellee, v. State Mutual Life Assurance Company of Worcester, Massachusetts, Appellant.

Gen. No. 40,914.

256

Heard in the first division of this court for the first district at the October term, 1939. Opinion filed May 20, 1940.

DEFREES, BUCKINGHAM, JONES & HOFFMAN, of Chicago, for appellant; VINCENT O'BRIEN, JOHN H. LETSINGER and CHARLES O. BUTLER, all of Chicago, of counsel.

EKERN & MEYERS, of Chicago, for appellee; LUTHER F. BINKLEY and VERNON A. FORSBERG, of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

January 22, 1935, defendant insurance company issued a ten-year term convertible policy for life insurance for $10,000 to Walter H. Thompson. Plaintiff, his wife, was named beneficiary. May 28, 1935, Walter H. Thompson died and proofs of loss were made but the insurance company denied liability on the ground that Thompson had made false answers to questions put to him at the time he made application for insurance. Afterward plaintiff brought suit to recover on the policy. There was a jury trial, a verdict and judgment in plaintiff's favor for $11,958.32 and defendant appeals.

The record discloses that Walter H. Thompson, for

many years, was employed by the Federal Mutual Liability Insurance Company of Boston, Mass., and for about six years before his death was employed by the Lumbermen's Mutual Casualty Company, in Chicago. January 22, 1935, he applied to defendant for the policy in suit and his application states that at that time he held three ordinary life policies issued by defendant company, one in 1922 for $2,000; one in 1926 for $5,000 and one in 1929 for $5,000. Part of the application also shows the questions put to Thompson by the examining physician, Dr. McCarty, and the answers as made by him. Some of the questions and answers are:

"31. For what illness, disease or injury did you last consult a physician or practitioner? A. Erysipelas, 1929; 1 Attack; Severity: Minor; After Effects: None.

"32. What illnesses, diseases or accidents have you had in the last five years? A. None.

"33. Have you had any of the following diseases: Answer Yes or No. (a) Rheumatic fever? A. No. (b) Nervous troubles? A. No. (c) Tuberculosis? A. No. (d) Asthma, pleurisy, lung trouble? A. No. (e) Raising or spitting of blood? A. No. (f) Syphilis? A. No. (g) Fainting spells, cancer or any tumor, palpitation, appendicitis, jaundice, gastric or duodenal ulcer, goiter, hyperthyroidism, enlarged glands, stricture, disease of heart or blood vessels, gall bladder, liver, intestines, kidneys, bladder, prostate gland, testicles, eye, discharge from ear or deafness? A. No.

"34. Have you ever been on a restricted diet? A. No.

"35. Have you ever had or do you contemplate having a surgical operation? A. No.

"36. Have you ever been an inmate of any hospital or sanitarium for treatment, observation or diagnosis? A. No.

"37. Has your blood pressure ever been found abnormal? A. No.

"38. (a) Has your urine ever shown albumin? A. No. (b) Or sugar? Have you ever taken insulin? A. No.

"39. HAVE YOU EVER sought advice or treatment of a physician or practitioner for any injury or local or general disease not already mentioned? A. No."

Defendant contends that after Mrs. Thompson made proofs of loss June 14, 1935, it employed an investigator and found that Dr. McDonald, who was one of Mr. Thompson's attending physicians during his last illness, had treated him December 18, 1933, as stated by defendant's counsel "for influenza which was accompanied by fever, sore throat, aches and general malaise and which confined him to his home for one week—on the second occasion [January 8, 1934] for enterocolitis accompanied by fever, nausea and abdominal distress." Counsel for defendant further say that Dr. McDonald's office record also shows that the doctor found Thompson's heart was enlarged on December 18.

The evidence further shows that except for those two occasions, December 18, 1933 and January 8, 1934, when Thompson was absent from work but a short time, he performed his every day work with the Lumbermen's Insurance Company until May 25, 1935, when he became severely ill and died three days later of coronary thrombosis.

Dr. Sutton, for defendant, testified he was called May 26, 1935, by Dr. McDonald, who attended Thompson; that upon examination his diagnosis was a thrombosis of the coronary artery; that the patient was about to die; that he saw him again on the next day and three times on the 28th, when the patient died; that on the next day he performed a partial autopsy confined to the heart at the undertaking establishment, "the purpose of which was to check findings and diagnosis;" the "we found the heart was dilated, and particularly the left chamber ... There was a thrombosis of the left coronary artery and some arteriosclerosis," which is

ordinarily known as hardening of the arteries. There is evidence also to the effect that from the time Dr. McDonald saw Thompson in December, 1933 and January 1934, in addition to Thompson performing his daily work, he played handball and golf, made no complaint at any time and apparently seemed healthy.

Dr. McCarty, defendant's physician who took Thompson's application on January 22, 1935, testified that he asked the questions and wrote down the answers given by Thompson; that Thompson did not mention he had seen Dr. McDonald in December, 1933 or January, 1934; that at the time of answering the questions he examined Thompson's blood pressure, pulse, heart, chest measurements, height, weight, specimen and reflexes, and that he made the examination at the request of defendant insurance company; that "I listened to the heart and then percussed it;" that he listened with a stethoscope to the heart sounds and found nothing abnormal; that Thompson did not mention to him the fact he had been examined in November, 1934, by Dr. Graves of the Lumbermen's Mutual Casualty Company with which company Thompson was then employed. On cross-examination he testified that he made a careful examination of Thompson; that all he wanted was to have Thompson answer the questions as to what Thompson remembered; that "A man can in the early stages, have arteriosclerosis and never have any sign or symptons, and he can have hypertrophy of the heart and never know it, or never have a sign of pain about it."

The evidence further shows that prior to the application made by Thompson for the policy in question, January 22, 1935, he had made a number of other applications to defendant insurance company and it had issued to him other policies as follows: prior to 1921, $1,000; 1921, $8,000; 1922, $2,000; 1926, $5,000; 1929, $5,000; or a total of $21,000. The applications made for these policies which defendant had in its possession

show that Thompson, at the several times, answered questions concerning his health, which were somewhat variant from the answers made by him in the application involved in the instant case and the doctor representing defendant insurance company testified on the trial saying he knew that the answers made by Thompson to him were at variance with some things he had said in prior applications.

Dr. Amiral, the chief medical examiner for defendant, who accepted the application in question, on cross-examination testified "From our records I knew the answer [made by Thompson] was not true, but I thought he had answered it to the best of his knowledge and information, which is all that we ever expected him to do."

There is considerable other evidence in the record but we think it unnecessary to mention it here. At the request of counsel for defendant the court submitted to the jury two special interrogatories, viz., "(1) Did Walter Herbert Thompson falsely answer any question or misrepresent any matter in his application for the policy of life insurance sued upon herein with intent to deceive State Mutual Life Assurance Company? (2) Did Walter Herbert Thompson falsely answer any question or misrepresent any matter in his application for the policy of life insurance sued upon herein, and if so did such misrepresentation materially affect either the acceptance of the risk or the hazard assumed by the Company?" To each question the jury's answer was "No."

Counsel for defendant contend that Thompson intentionally made misrepresentations in his answers to questions put to him by the medical examiner, as shown by the application. That these misrepresentations materially affected the acceptance of the risk and the hazard assumed by the company and that such "Misrepresentations will at the option of the Company avoid the policy not only if made with intent to deceive but also in the

absence of such intent if they materially affected the acceptance of the risk or the hazard.'' And it is argued that if Thompson had answered the questions truthfully as to his being attended by Dr. McDonald in December 1933 and January, 1934, the company would have investigated the matter further and refused to issue the policy. There is testimony by some of the doctors to sustain the latter contention but we are clear this is mere speculation.

Upon a consideration of all the evidence in the record, we are clearly of opinion that the finding of the jury and the jury's answers to the two special interrogatories (to the effect that Thompson did not answer falsely and did not misrepresent any matter in his application, and if there was any such misrepresentation it did not materially affect the acceptance of the risk or the hazard assumed by the company), are not against the manifest weight of the evidence. On the contrary, we are of opinion the verdict of the jury is the only verdict that could stand in view of the evidence.

We are also unable to agree with counsel's contention that any misrepresentation made by Thompson in his answers to questions put to him in his application if they materially affected the acceptance of the risk or the hazard assumed, would warrant the company in avoiding the policy. In support of this counsel cite *Western & Southern Life Ins. Co. v. Tomasun*, 358 Ill. 496; *Tanner v. Prudential Life Ins. Co.*, 283 Ill. App. 210, and other cases.

We think the reasonable and just rule in such case is that unless the applicant knows or has reason to know that his statements, concerning his physical condition or his having had certain diseases, are false, such answers do not bar recovery upon an insurance policy. *Joseph v. New York Ins. Co.*, 219 Ill. App. 452; *Minnesota Mut. Life Ins. Co. v. Link*, 230 Ill. 273; *Globe Mut. Life Ins. Ass'n v. Wagner*, 188 Ill. 133;

*Mouler v. American Life Ins. Co.*, 111 U. S. 335; *Walsh v. Prudential Ins. Co.*, 285 Ill. App. 226.

In the *Tomasun* case (358 Ill. 496) a bill was filed to cancel an insurance policy on the ground that misrepresentations had been made by the applicant for insurance which were material to the risk. A decree was entered dismissing the bill for want of equity which was affirmed by the Appellate Court, but the judgment was reversed by the Supreme Court. The court, in its opinion, discusses the facts in the case and says in effect that there was intentional fraud on the part of the applicant. Some language was used to the effect that if there was no intentional fraud it would make no difference in the result. And our Supreme Court, a few days ago at the April Term, filed an opinion in No. 25378, *Froehler v. North American Ins. Co. of Chicago*, which was an action brought on a policy by the insured's widow, the beneficiary, where the court said: "The company's principal reliance is on *Western and Southern Life Ins. Co. v. Tomasun*, 358 Ill. 496, wherein certain language is said to apply to the case now before us. The cases are far different on their facts because that one involved an absolute and intentional fraud. They are still further apart as a matter of law because in that case, no contract ever existed between the parties, whereas, in this case, we are dealing with a question of performance of an existing contract."

In the *Tanner* case (283 Ill. App. 210), which was a suit brought to enforce a life insurance policy, decided by another Division of this court, the defense interposed was that the insured was guilty of fraud and misrepresentation in his answers to certain questions contained in his application. In that case the court analyzed the evidence and said: "It is urged by plaintiff that the falsity of Tanner's answers, his knowledge with respect thereto, his intent to defraud and the materiality of his representations were all questions of fact, which were properly submitted to the jury and

resolved in plaintiff's favor. The difficulty with this position is that the verdict was against the manifest weight of the evidence inasmuch as the undisputed evidence shows conclusively that the answers to the questions were false and concerned material facts.''

*Joseph v. New York Life Ins. Co.*, 219 Ill. App. 452, was an action brought on two life insurance policies by the beneficiary, the wife of the insured, where it was contended that the insured had made false answers to questions put to him, etc. We affirmed the judgment in plaintiff's favor. We discussed and analyzed many authorities on the subject now before us, including cases hereinbefore cited of *Minnesota Mut. Life Ins. Co. v. Link*, 230 Ill. 273; *Globe Mut. Life Ins. Ass'n v. Wagner*, 188 Ill. 133; *Moulor v. American Life Ins. Co.*, 111 U. S. 335. We there reached the conclusion that ''the law is that where it is sought to avoid a policy on the ground that the insured made false answers in his application, the question of the good faith of the applicant in making his answers (in the absence of an express provision that they are warranties) is always a material one, and as Mr. Justice Harlan said in the *Moulor* case: 'If it be said that an individual could not be afflicted with the diseases specified in the application without being cognizant of the fact, the answer is that the jury, in that case, would have no serious difficulty in finding that he had failed to communicate to the company what he knew or should have known was material to the risk, . . . '

''While there is some apparent conflict in the language used in the reported opinions, yet we think upon a careful analysis of each case it will be found that there is no real conflict; that the question in each case is whether the answers made by the applicant were knowingly false.'' We then cite a number of authorities which we said sustained this view. The *Joseph* case was affirmed by the Supreme Court, *Joseph v. New York Life Ins. Co.*, 308 Ill. 93, but the question which

we are now considering and which we considered in that case was not touched upon.

From what we have said we think it follows that the trial court did not err in giving the instructions tendered by plaintiff and in refusing to give instructions 20 and 21 requested by defendant.

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.