Christ Nogulich and Sophie Nogulich, Appellees, v. Metropolitan Life Insurance Company, Appellant.

Gen. No. 42,198.

412

Opinion filed January 25, 1943. Rehearing denied February 9, 1943.

HOYNE, O'CONNOR, RUBINKAM & MELANIPHY, of Chicago, for appellant; NATHANIEL RUBINKAM and JOHN C. MELANIPHY, both of Chicago, of counsel.

IRVING G. ZAZOVE, of Chicago, for appellees.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

In a suit on an insurance policy issued February 1, 1939 on the life of plaintiffs' daughter Violet, in which plaintiffs were named beneficiaries, there was a trial by jury with a verdict of $1,084.60 against defendant on which judgment was entered.

The complaint alleged the issuance of the policy, the payment of the premiums, the death of Violet on December 7, 1939, when the policy was in force, proofs of loss and demand for payment, vexatiously refused.

The answer of defendant set up as a defense that certain answers of the insured contained in Part B of the application made January 4, 1939 were "untrue and false and were known by the said Violet Nogulich

to be untrue and false,'' in particular in response to an inquiry whether she had ''ever been an inmate of a hospital, sanatorium, asylum or cure, whether for observation, examination or treatment,'' she replied ''No''; and in answer to the question, ''What clinics, hospitals, physicians, healers or other practitioners, if any, have you consulted or been treated by, within the past five years? If none, so state,'' she answered ''No''; that these answers were untrue and false and known by the insured to be untrue and false; that the insured had been attended and examined by Dr. L. E. Barryte on December 10, 1938, and that she was a patient at the Sedgwick Dispensary of the Municipal Tuberculosis Sanitarium of Chicago, Illinois, on December 10, 1938, and was there examined and placed under observation and thereafter was re-examined on January 6, 1939, at the Dispensary and a diagnosis of pulmonary tuberculosis in a far advanced stage was made; that the cause of death of the insured was pulmonary tuberculosis; that these misrepresentations by her materially affected the acceptance of the risk and the hazard assumed by defendant, which, if it had known the true facts instead of the facts represented in the application, would not have issued the policy; that the defendant company was deceived by the insured and was led to issue the policy through her fraud and misrepresentation; that for these reasons the policy was void and of no force and effect. The answer admits that the amount of premiums paid (namely, $13.70) is due and says it has been tendered and refused.

To the answer plaintiffs replied that prior to the issuance of the policy the insured and other members of her family had several insurance policies, the premiums on which were paid monthly to the agent of defendant; that in the latter part of 1938 the agent informed plaintiffs that the policy on the life of the deceased was in default and that it would be necessary

to sign a new application for a new policy; that on the 30th day of December, 1938, the agent acting within the scope of his authority stated to plaintiffs it would be necessary for the deceased to sign a new application and produced such an application, which he requested her to sign; that he then stated to the plaintiffs and to the insured that he would get all the necessary data to answer the questions from the old policy; that such was the usual customary way of handling such a situation and that the insured, believing these representations to be true, signed the application in blank in two places; that all the printed questions appearing on the blank were left unanswered; that the agent asked the insured whether she had any medical care of any kind since the lapse of the last policy, that she informed him she was treated by Dr. Barryte, gave him the street number of the doctor's office and also informed him that on December 12, 1938, and on December 14, 1938, she had been examined at the Sedgwick Dispensary; that the agent then told her that because of these facts it would be necessary for a doctor representing the defendant company to examine her; that several days later, Dr. G. H. Gilbreith, an agent of the defendant, appeared at the home of the insured and asked her whether she had been treated by Dr. Barryte in the early part of December and the deceased answered in the affirmative. He also asked her whether she had been treated at the Sedgwick Dispensary, and she told him that she was examined at that Dispensary on December 12 and 14, 1938, and had some X-ray plates taken; that he thereupon requested permission to examine her and did examine her, stating that she would hear from the insurance company later. The replication specifically denied that the insured answered the questions as stated in the answer but averred that in the absence of plaintiffs and the insured, and with knowledge on their part, the defendant and its two agents (knowing the facts) undertook

to fill out the application and instead of stating the facts as disclosed to them, inserted conclusions of their own; that the answers which defendant set up in avoidance of the policy having been made by these agents with knowledge, the insurance company was precluded from insisting that these words of the agents and their answers were representations rendering the policy void. The replication denied that Dr. Barryte told plaintiffs or the insured that he suspected tuberculosis, admits the insured was examined at the Sedgwick Dispensary on December 12 and 14, 1938, but states the fact to be that the agents of the defendant knew of these facts at the time of the application for the insurance. It admits deceased was re-examined on January 6, 1939, but denies that either plaintiffs or the deceased were informed that any diagnosis of pulmonary tuberculosis was made and denies knowledge on the part of plaintiffs at the time the policy was delivered that the insured was afflicted with tuberculosis or that the insured knew at any time she was suffering from tuberculosis.

The defendant did not file any rejoinder to this replication. It did not aver lack of authority on the part of its agents. It did not take issue on the facts averred therein. On the issues raised by the complaint, the answer and the replication, the cause was sent to the jury. The verdict of the jury was for plaintiffs and against defendant, and it is not argued the verdict of the jury is against the evidence.

From the verdict of the jury on issues of fact and from uncontradicted evidence in the record, it appears Violet at the time of her application was about 16 years of age; that she had a prior policy obtained through the same agent, Mr. Bleeden, which had lapsed for nonpayment of premiums; that she was told it would be necessary to make out a new application; that on December 30, 1938, she signed in blank the application attached to the policy; that on January 4, 1939,

she was examined by Dr. Gilbreith, the physician sent by defendant, who reported to defendant that she was in good health; that the first premium was paid January 16, 1939, and the insurance policy delivered to her father on February 1, 1939. She was admitted to the Municipal Sanitarium on September 3, 1939, and died there of pulmonary tuberculosis (or consumption) December 7 of the same year.

The answers which are said to constitute misrepresentations were not written by the insured but by the agents of the defendant company, and, as a matter of fact, Violet answered truthfully and not falsely with reference to her medical history.

The evidence of a number of doctors at the Dispensary is to the effect that on the respective dates when Violet visited the Dispensary she was infected by tuberculosis. Their evidence also showed that on several occasions afterward she and members of her family received medicines for her there. It is not, however, claimed (and the evidence does not show) that at the time of her application Violet had been informed or knew she had the disease from which she afterwards died. On the contrary it affirmatively appears that she was not told that she had this disease and it must be admitted, in view of the verdict of the jury, that there was no actual intention on her part to defraud the defendant. Bleeden, the soliciting agent, admits that if he had filled out the answers to Part B of the application, it would not have been necessary to have an examination of Violet by the medical examiner.

The defendant's principal contention is that the evidence to the effect that Violet truthfully informed the agents of defendant of the true facts concerning her medical history should not have been admitted and should have been stricken upon defendant's motion. This contention is made on the theory that since the application was by provisions in the written contract

made a part of the contract, and in writing, the admission of oral evidence to vary the terms of that written contract was reversible error. On the other hand plaintiffs contend the evidence was admissible, not for the purpose of varying the terms of the contract but to show the defendant company is now estopped to set up the defense that the policy is void because of these untrue statements. Plaintiffs also contend that having through its own physician made a thorough examination of the applicant, and the physician being informed of the true facts about the insured's medical history, after which he reported her to be in good health, defendant waived its right to set up this defense.

The soliciting agent and the medical examiner were the agents of defendant, not the insured. Even if the policy had provided otherwise, a provision of this kind would have been invalid under the statute. Smith-Hurd's Ann. Stats., ch. 73, par. 837 (e), p. 315 [Jones Ill. Stats. Ann. 66.900]. There are numerous well considered cases in this State holding that such evidence is admissible and may create an estoppel or a waiver. *Phenix Ins. Co. v. Hart,* 149 Ill. 513, 36 N. E. 990; *Home Ins. Co. v. Mendenhall,* 164 Ill. 458, 45 N. E. 1078; *Royal Neighbors of America v. Boman,* 177 Ill. 27, 52 N. E. 264; *Security Trust Co. v. Tarpey,* 182 Ill. 52, 54 N. E. 1041; *Provident Savings Life Assur. Society v. Cannon,* 201 Ill 260, 66 N. E. 388; *Johnson v. Royal Neighbors,* 253 Ill. 570, 97 N. E. 1084; *Weisguth v. Supreme Tribe of Ben Hur,* 272 Ill. 541, 112 N. E. 350, and *Guter v. Security Ben. Ass'n,* 335 Ill. 174, 166 N. E. 521.

In the *Weisguth* case the Supreme Court said: (p. 549)

"In passing upon a similar question in *Provident Life Assurance Society v. Cannon,* 201 Ill. 206, we said: 'Notice to the agent at the time of the application for the insurance, of facts material to the risk is notice

to the insurer, and will prevent it from insisting upon a forfeiture for causes within the knowledge of the agent. (*Phenix Ins. Co. v. Hart,* 149 Ill. 513; *Home Ins. Co. v. Mendenhall,* 164 id. 458.) Where the assured discloses facts to the agent and the agent undertakes to fill out the application, and instead of stating the facts as they are disclosed to him inserts in lieu thereof conclusions of his own, the insurance company will not be permitted to insist that the words of the agent, and not of the assured, are warranties, rendering the policy void.—*Phenix Ins. Co. v. Stocks,* 149 Ill. 319; *Royal Neighbors of America v. Boman,* 177 id. 27; *Teutonia Life Ins. Co. v. Beck,* 74 id. 165.' "

We understand the defendant contends that all these cases have been in effect overruled by the later decision of the Supreme Court in *Western & Southern Life Ins. Co. v. Tomasun,* 358 Ill. 496. Defendant misinterprets the *Tomasun* case. It was a case in equity to set aside and rescind a life insurance contract obtained by the insured through actual and intentional fraudulent representations. This appears not only from the opinion filed but from a later opinion prepared by the same judge, *Froehler v. North American Life Ins. Co.,* 374 Ill. 17.

In *Joseph v. New York Life Ins. Co.,* 219 Ill. App. 452, this court reviewed the decisions of this and other States on the question of whether false answers made by the assured would avoid an insurance policy, whether the assured knew they were false or not. We there said:

"While there is some apparent conflict in the language used in the reported opinions, yet we think upon a careful analysis of each case it will be found that there is no real conflict; that the question in each case is whether the answers made by the applicant were knowingly false. Other authorities sustain this view. *Donahue v. Mutual Life Ins. Co.,* 37 N. Dak. 203; *Baer*

*v. State Life Ins. Co.*, 256 Pa. 177; *Oplinger v. New York Life Ins. Co.*, 253 Pa. 328; *Sharrer v. Capital Life Ins. Co.*, 102 Kan. 650; *Reserve Loan Life Ins. Co. v. Isom*, 173 Pac. (Okla.) 841; *Mutual Life Ins. Co. v. Morgan*, 39 Okla. 205; *Guarraia v. Metropolitan Life Ins. Co.*, 90 N. J. L. 682; *Suravitz v. Prudential Ins. Co.*, 244 Pa. 582.''

On appeal to the Supreme Court the decree in that case was affirmed. *Joseph v. New York Life Ins. Co.*, 308 Ill. 93.

In *Thompson v. State Mut. Life Assur. Co. of Worchester, Mass.*, 305 Ill. App. 255, the opinion again reviews the *Tomasun* case as well as *Tanner v. Prudential Ins. Co. of America*, 283 Ill. App. 210, the latter case also now cited and relied on by the defendant. We there pointed out that the *Tomasun* case had been misinterpreted and reaffirmed the rule laid down in *Joseph v. New York Life Ins. Co.*

The later case of *McMahon v. Continental Assur. Co.*, 308 Ill. App. 27, follows the *Thompson* case. If such is the rule where complaint is filed in equity to rescind the policy, much more would the rule be applicable where, after the death of the insured, a suit is brought upon the policy, as is the case here.

Defendant cites a large number of cases to the effect that the soliciting agent or medical examiner of an insurance company is without authority to waive any of the provisions of the insurance policy. Among other cases, *Merchants' Nat. Bank v. Nichols & Shepard Co.*, 223 Ill. 41, 49, is cited. No such issue, however, was presented by the pleadings in this case. The replication pleaded estoppel and waiver, and there was no rejoinder denying the authority of the soliciting agent or the medical examiner. Under such circumstances the issue cannot be raised in this court. *Tykalowicz v. Metropolitan Life Ins. Co.*, 249 Ill. App. 280. We have already cited a large number of Illinois Supreme Court

cases holding that such evidence is admissible in order to prove estoppel or waiver, and such is, we think, the general rule.

In Am. Jur., vol. 29, sec. 1505, page 1128, it is said:

"In the large body of cases involving waiver and estoppel as to a provision or the forfeiture of an insurance contract, the doctrines of waiver and estoppel are applied without mention of the parol evidence rule; and in the great majority of cases, the force of the objection against parol evidence does not seem to be recognized."

In the case of *Beal v. Park Fire Ins. Co.*, 16 Wis. 257, 82 Am. Dec. 719, a suit on a fire insurance contract, the specific question of whether oral evidence was admissible under such circumstances was discussed. The opinion states:

"The evidence of Hyer's acts and declarations at the time the risk was taken, together with those of the renewing agent, Hatch, and also the testimony of the latter, were properly received, unless, as urged by counsel, they should have been excluded on the ground that they contradicted the written contract set forth in the policy and conditions annexed. There is little doubt that such was the effect; yet, without intending to question the rule that parol evidence is admissible to vary written instruments, we are of the opinion that the evidence was properly received. That rule is encountered by, and, we think, must yield to another rule in this case, which is, that no one should take advantage of his own mistake or wrong, to the injury of another who is innocent. The policy was issued and renewed at the solicitation of the company, without written application on the part of the insured, and upon the personal inspection and survey of the premises by its agents. There is no pretense of fraud or misrepresentation on the part of the insured, that he did anything to deceive or mislead the agents or to prevent their acquiring full knowledge of the nature and extent

of the risk. . . . With this knowledge or means of knowledge, they delivered and subsequently renewed the policy, and received the premiums. If they did so intending the policy to be void, it was a gross fraud. If it was a mistake, the condition of the company is no better.''

By defendant's given instruction No. 1 the jury were told that if they believed from the evidence any of the answers in the application were false ''whether made knowingly false or not, you should find the issues for the defendant,'' and by defendant's given instruction No. 2 the jury were told that as a matter of law any untrue statement made by the assured material to the risk in the application for policy ''prevents the policy from taking effect whether said statements were made ignorantly or in good faith.'' Both were wrong and should have been refused. *Joseph v. New York Life Ins. Co.,* 219 Ill. App. 452; *Minnesota Mut. Life Ins. Co. v. Link,* 230 Ill. 273; *Moulor v. American Life Ins. Co.,* 111 U. S. 335; *Globe Mut. Life Ins. Ass'n v. Wagner,* 188 Ill. 133; *Thompson v. State Mut. Life Assur. Co. of Worcester, Mass.,* 305 Ill. App. 255; *McMahon v. Continental Assur. Co.,* 308 Ill. App. 27. A number of other instructions were requested by the defendant but refused, and properly so, because they contain the same error pointed out in the two instructions given.

The judgment will be affirmed.

*Affirmed.*

O'CONNOR and McSURELY, JJ., concur.