Virginia B. Hamberg, Appellee, v. Mutual Life
Insurance Company of New York, Appellant.

Gen. No. 42,887.

Heard in the first division
of this court for the first district at the December term, 1943.
Opinion filed April 3, 1944. Rehearing de-
nied April 17, 1944.

WINSTON, STRAWN & SHAW, of Chicago, for appel-
lant; LOUIS W. DAWSON, GEORGE B. CHRISTENSEN,
GERARD E. GRASHORN and EDWARD J. WENDROW, all of
Chicago, of counsel.

ARTHUR J. J. WELSH and JULIUS S. NEALE, both of Chicago, for appellee; WALTER E. Moss, of Chicago, of counsel.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

Defendant appeals from a judgment for $1,203.22, the amount of death benefits then payable to plaintiff in instalments under an insurance policy for $5,000, issued August 14, 1940 by defendant on the life of Stanley H. Hamberg.

Over plaintiff's objection the cause, commenced in the circuit court of Cook county, was transferred to the United States court, where a trial resulted in a verdict for defendant; the judgment entered on this verdict was vacated and the cause remanded to the State court; the complaint was amended, defendant answered and filed a counterclaim seeking annulment of the policy because of misrepresentations in the application as to Hamberg's medical history. The trial resulted in a verdict and judgment for plaintiff; defendant moved for judgment, notwithstanding the verdict, and also filed a motion for a new trial. Both motions were denied.

When he applied for the policy the insured was 29 years of age, about 5 feet 10 or 11 inches in height and weighed about 192 pounds; he had played football in college and carried on his athletic activities afterwards; in the evening of June 11, 1940 he complained of numbness in both arms and pain and numbness between the shoulders; his wife, the plaintiff, called Dr. Mackenzie, who examined his throat, ears, eyes, chest, lungs, heart, abdomen and reflexes and found a temperature of 102 Fahrenheit and a blood pressure of 180 systolic and 130 diastolic. The doctor says the normal temperature is 98.4, and normal blood pressure for a man 29 to 30 years of age is 150 or less systolic, and 100 or less diastolic. The doctor told Hamberg to stay in bed until his temperature had been normal for

24 hours and then come to the doctor's office; aspirin tablets were prescribed; the insured went to work the next morning. June 18 he was given a further examination by Dr. Mackenzie, who wrote him the following day stating that his blood specimen was normal but that on microscopic examination a considerable number of pus cells were found in the urine; the doctor asked that Hamberg see him in about 10 days; that with a view to making a diagnosis he might investigate whether the pus cells came from the bladder, kidney or prostate or whether they were the result of Hamberg's recent febrile upset. Hamberg did not see the doctor again until November 19. He then told the doctor that he had played touch football the Sunday before and went to bed feeling fine, but awoke about 2 o'clock in the morning with a feeling as of a band around his chest; that he could not take a deep breath and felt more comfortable sitting up than lying down; that he felt all right the next few days, but on walking a few blocks in the cold would get a pain in the triceps region in both arms and a feeling of pressure over the whole chest area; that after playing touch football the day before his visit he again had pain in the arms and a numb, dull pain in the heart area after walking several blocks in the cold; that these pains disappeared a short time after he went inside and sat down. On physical examination the doctor found the heart apparently normal and the blood pressure 152 systolic and 102 diastolic; however, he told Hamberg that his symptoms were indicative of disease of the heart; he gave him some nitroglycerin tablets to dilate the blood vessels very rapidly and to relieve the pain in the region of the heart, and advised him to have an X-ray of the chest to see if the heart was enlarged, and to have an electrocardiogram made right away and go to the hospital for further examination, and that they should probably keep him in bed for a prolonged period if the electrocardiogram showed the heart was

damaged. December 4, 1940 Hamberg was examined by Dr. Donkle, a specialist in diagnostic work, who found him suffering from shortness of breath, pain around his chest and dizziness; he had a rapid heart and some discoloration about the mouth and hands; an electrocardiogram was taken the following day by another doctor; this shows evidence of myocardial damage. December 13 the insured was found dead, sitting in his automobile in a parking lot near his place of business. Dr. Donkle, as attending physician, certified the cause of death as myocarditis and testified that this is a chronic affair and had been in existence for several months.

Hamberg applied for insurance August 2, 1940; in answering certain questions in his application he stated that he had not consulted any physician or practitioner for any purpose in the preceding 5 years; that albumin, sugar or other abnormality had never been found in his urine; that he had never had a blood examination or other special laboratory test and had never had abnormal blood pressure. In its affirmative answer and counterclaim defendant alleges that these, and other answers which we need not consider, were falsely and fraudulently made, with intent to defraud and cheat the defendant, and that if the insured had answered truthfully defendant would not have issued the policy. Plaintiff filed a lengthy reply, admitting the answers alleged to have been made, denying that they were wholly and knowingly false, and seeking to qualify and minimize their effect. No further pleadings were filed, and plaintiff contends that by its reply "the plaintiff in apt language showed that the supposed misrepresentations of Stanley H. Hamberg were immaterial," and that, "as the pleadings now stand the immateriality of the supposed misrepresentations are admitted." This position is untenable. To hold otherwise would unnecessarily extend the pleadings to be filed in order to arrive at an issue, and defeat the

purpose of the present practice act. Defendant could traverse the reply only by repeating the allegations of its counterclaim.

Defendant contends that the effect of the misrepresentations charged is determined by section 154 of the Insurance Code of 1937 (Ill. Rev. Stat. 1943, ch. 73, par. 766 [Jones Ill. Stats. Ann. 66.829]), and that it is no longer necessary to consider or attempt to reconcile the numerous cases dealing with policies in force prior to the enactment of the code; that under this section misrepresentations, as well as false warranties, defeat recovery on a policy, if made with intent to deceive, or if they materially affect the acceptance of the risk or materially affect the hazard assumed by the company. Plaintiff does not directly answer this position of the defendant. She cites the provisions of the policy that "All statements made by the Insured shall in the absence of fraud, be deemed representations and not warranties," and, relying on decisions prior to the enactment of the code, where distinctions were made between misrepresentations and warranties, insists that defendant must affirmatively prove that the answers complained of were material and untrue, and that Hamberg knew them to be untrue when he made them, or did not act in good faith when making them. She then argues that the evidence does not show that any of the answers were knowingly false or that any of the answers were made with actual intent to deceive. Section 154, after stating that no misrepresentation, false warranty or breach of condition shall defeat or avoid a policy unless stated in the policy or indorsement or rider attached thereto, or, in a written application therefor, of which a copy is attached to or indorsed on the policy and made a part thereof, provides: "No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard

assumed by the company.'' The language used is clear and unambiguous. The section places representations and warranties on the same footing and provides, alternatively, that before a misrepresentation or false warranty shall defeat or avoid a policy (a) it shall have been made with actual intent to deceive, or (b) it shall materially affect the acceptance of the risk, or (c) it shall materially affect the hazard assumed by the company. *Anderson v. John Hancock Life Ins. Co.,* 316 Ill. App. 338; Illinois Insurance Code Annotated, page 285; *Krajewski v. Western & Southern Life Ins. Co.,* 241 Mich. 396; *North American Life Assur. Co. v. Jones,* 287 Mich. 298; *Rainger v. Boston Mut. Life Ass'n,* 167 Mass. 109; *Johnson v. National Life Ins. Co.,* 123 Minn. 453; *Mutual Life Ins. Co. v. Allen,* 174 Ala. 511; *Security Life Ins. Co. of America v. Black's Adm'r,* 190 Ky. 23.

The undisputed evidence shows that all the answers given above were false, and that, with the possible exception of the answer relating to the abnormal blood pressure, all were known to be false when the insured made them. We make the exception because Dr. Mackenzie testified that he did not discuss the blood pressure reading with Hamberg. It is unnecessary to make a holding as to whether the misrepresentations were made with actual intent to deceive. Recovery must be denied if any of the misrepresentations materially affected the acceptance of the risk or the hazards assumed by the company. The acting medical referee of the defendant testified, without contradiction but over plaintiff's objection, that had the questions been answered truthfully the defendant would not have issued the policy, and that the answers to the questions are material to the risk the defendant was asked to assume. He also testified, without contradiction and without objection by plaintiff, that the facts which would have been disclosed by truthful answers to the questions would increase the risk to be assumed by the

defendant. Corroboration of this position is found in the testimony of Dr. Mackenzie. He testified that as late as November 19 his physical examination disclosed nothing wrong with the heart and showed a blood pressure practically normal, but that the symptoms stated by Hamberg were indicative of disease of the heart which required immediate action in the way of X-ray and electrocardiogram and hospitalization for further examination. Information as to the prior examinations by Dr. Mackenzie and his findings, which truthful answers would have revealed, would undoubtedly have led the medical examiner of the defendant to a different conclusion than that reached by him on his examination. He, like Dr. Mackenzie, found Hamberg's heart to be all right. He testified that he could not say from his examination that it was all right.

The trial court should have held as a matter of law that the policy was avoided because of misrepresentations which materially affected acceptance of the risk, as well as the hazards assumed by the company. On presentation of the claim under the policy and by its answer defendant tendered the quarterly premium paid on the policy, with interest, and on the trial tendered that amount in open court. It was refused.

The judgment is reversed and judgment entered here for plaintiff for the sum of $34.60, without costs. The costs here are taxed against plaintiff.

*Reversed and judgment here.*

Mr. Presiding Justice O'Connor specially concurring: I agree that the judgment should be reversed for the reason that the undisputed evidence shows that the answers given by the assured to the questions asked of him were knowingly false. But I am unable to agree with the construction given to § 154 of the Insurance Code of 1937. That section provides that no representation or false warranty made by the insured, etc., shall defeat or avoid the policy unless such mis-

representation or false warranty are attached to the policy. The section then continues: "No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company." Prior to the passage of this section in 1937 it had been held by the Supreme Court of this State, by this court and by the Supreme Court of the United States and other courts that where it was sought to avoid a life insurance policy on the ground that the insured had made false answers to questions in his applications the good faith of the applicant in making the answers was always a material one and the question in each case was whether the answers were knowingly false. *Globe Mut. Life Ins. Ass'n v. Wagner,* 188 Ill. 133; *Minnesota Mut. Life Ins. Co. v. Link,* 230 Ill. 273; *Moulor v. American Life Ins. Co.,* 111 U. S. 335; *Joseph v. New York Life Ins. Co.,* 219 Ill. App. 452; *Walsh v. Prudential Ins. Co.,* 285 Ill. App. 226; *Thompson v. State Mut. Life Assur. Co.,* 305 Ill. App. 255; *McMahon v. Continental Assur. Co.,* 308 Ill. App. 27. See also *Froehler v. North American Life Ins. Co.,* 374 Ill. 17. There are other cases holding that where the applicant for insurance gives false answers to questions put to him, the question whether he knew they were false is immaterial. Some of the cases we referred to in the *Joseph* case where we pointed out that in a number of such cases the statement in the opinion was *obiter.*

In the instant case section 154 provides that no misrepresentation made by an applicant for insurance "shall defeat or avoid the policy unless it shall have been made with actual intent to deceive." These words, "shall have been made with actual intent to deceive" are rendered meaningless by the language which immediately follows them, *viz.,* "or materially

affects either the acceptance of the risk or the hazard assumed by the company.'' As stated by Prof. Havighurst in discussing this section—obviously a misrepresentation that does not affect the risk or hazard assumed is wholly immaterial and would not defeat the policy even though fraudulent. ''The obvious purpose of the section is to benefit the assured and not the company.'' 32 Ill. Law Rev. 403.

I think the word ''or'' after the word ''deceive'' should be construed to mean ''and.'' *Ayers v. Chicago Title & Trust Co.*, 187 Ill. 42–56; *Voight v. Industrial Com.*, 297 Ill. 109; *People v. Northwestern College*, 322 Ill. 120–124.

MR. JUSTICE MATCHETT: I concur for the reasons stated by Mr. Presiding Justice O'CONNOR.