**Sonea Koplen Cohen, Plaintiff in Error, v. New York Life Insurance Company, Defendant in Error.**

**Gen. No. 33,763.**

filed March 11, 1930.

AARON SOBLE, for plaintiff in error.

HAMLIN, TOPLIFF & COOPER and LOUIS H. COOKE, for defendant in error; HOMER H. COOPER and WENDELL J. BROWN, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

On June 21, 1927, Sonea Koplen, widow of Samuel Koplen and the beneficiary named in defendant's policy insuring his life, commenced a first class action in the municipal court of Chicago against defendant to recover the face amount of the policy, $3,000. On the eve of the trial, she having remarried, her name as plaintiff was changed accordingly. On the trial before a jury considerable evidence was introduced by both parties, and at the conclusion of all the evidence the court, on June 4, 1929, directed the jury to return a verdict in defendant's favor, and, upon this being done,

entered a judgment against plaintiff for costs, which judgment she seeks by this writ of error to reverse.

On May 5, 1924, the insured made written application for the policy through an agent (one Block) of defendant in Chicago. On May 26, 1924, defendant's medical examiner, Dr. Eberhardt, examined him at his home in Chicago and wrote in his answers to the questions in "Part II" of the application. He was a native of Russia, was 30 years of age, had attended school in Chicago, could read and write the English language, and was the proprietor of a barber shop business at No. 57 East Jackson Boulevard, Chicago. The application was forwarded to defendant's home office in New York and there examined, and, under date of June 2, 1924, the policy to which was attached a photographic copy of the application, was in turn forwarded to defendant's Chicago office. On June 23, 1924, upon payment through defendant's agent (Block) of the first premium of $81.27, the policy was delivered to the insured. He died at the Michael Reese Hospital in Chicago on January 12, 1925, *within one year* after the date of the policy. Among its provisions are the following:

"The Policy and the application therefor, copy of which is attached hereto, constitute the entire contract. All statements made by the insured shall, in absence of fraud, be deemed representations and not warranties, and no such statement shall avoid the Policy or be used in defense of a claim under it, *unless* it is contained in the written application and a copy of the application is endorsed upon or attached to this Policy when issued. . . . This Policy shall be incontestable *after two years* from its date of issue except for nonpayment of premium," etc.

Part II of the application is headed "Answers to the Medical Examiner." Then follow numerous questions and answers thereto respectively. And there are the following questions and answers:

"7. B. Have you been under observation or treatment in any hospital, asylum or sanitarium? (Answer) No.

"8. C. Have you consulted a physician or suffered from any ailment or disease of the stomach or intestines, liver, kidneys or bladder? (Answer) No.

"10. Have you consulted a physician for any ailment or disease not included in your above answers? (Answer) No.

"11. What physician or physicians, if any, not named above, have you consulted or been examined or treated by within the past five years? (Answer) None consulted.

The insured's signature appears at the bottom of Part II of the application and is witnessed by said medical examiner. Above the insured's signature is the following:

"On behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, I declare that *I have carefully read each and all of the above answers,* that they are each written as made by me, and each of them is *full, complete and true,* and *agree* that the company believing them to be true *shall rely and act upon them.*"

In plaintiff's statement of claim she alleged the execution and delivery of the policy (copy attached and made a part of the statement), the death of the insured and the furnishing to defendant on January 28, 1925, of proofs of death (copies attached and made a part of the statement); and further alleged that the insured during his lifetime "did keep, perform and comply with all the terms, conditions, and provisions of said policy upon his part to be kept and performed"; that plaintiff at all times since the insured's death has likewise kept and performed all the terms and conditions upon her part to be kept and performed; that defendant although often requested has refused to pay to her as

beneficiary the amount of the policy, $3,000, and that it is liable to her for such amount together with interest.

In defendant's affidavit of merits it is alleged that "the execution and delivery of said policy was induced by fraudulent misrepresentations as to material matters by said Samuel Koplen as applicant, and that defendant, upon discovery of the fraud, elected to and did disaffirm and rescind said policy in apt time and manner." And it is further alleged in substance that on May 26, 1924, Part II of the application was signed by the applicant in the presence of the medical examiner; that relying upon the applicant's statements therein defendant issued the policy; that after the insured's death defendant made investigation and ascertained that certain statements in the application (setting forth in full the questions and answers above mentioned) were "false, incomplete and fraudulent"; that in truth and in fact the insured, prior to May 26, 1924, had long been suffering with ailments and diseases of the stomach; that on January 8, 1924, he went to the Mount Sinai Hospital in Chicago for observation and treatment and remained there several days; that X-ray pictures of his body were taken and, although no definite diagnosis of his ailment or disease was made, he was advised that his condition was serious and that an operation might be necessary; that thereafter and at various times prior to the month of May, 1924, he received other treatments for ailments of the stomach and intestines at said hospital by Dr. H. B. Kipnis and other physicians, including Dr. Maurice I. Kaplan; that all of these facts were well known to the insured when he signed said application and that by his statements therein he intentionally and fraudulently deceived defendant; that his death was brought about by the ailment or disease from which he had been suffering when he signed the application; that defendant, im-

mediately upon discovery of the facts and of the insured's fraud, elected to, and did on March 21, 1925, disaffirm and rescind the policy, and wrote to the beneficiary, Mrs. Sonea Koplen, at her home in Chicago to that effect, and in the letter tendered back by its check the premium that it had received, which check Mrs. Koplen retained but has not cashed; that defendant now in court again offers to return said premium; and that by reason of the premises the policy became null and void, and defendant is not indebted to plaintiff in any sum.

No further pleading, replying to defendant's affidavit of merits, was filed by plaintiff, nor was any attempt made to amend her statement of claim in any manner. She did not present any pleading charging that the answers of the insured to said questions in Part II of the application were not actually and intentionally made, or that they were caused by any fraud practiced by the medical examiner, or that they were the result of any accident or mistake.

On the trial plaintiff introduced in evidence the policy (including the application) and the proofs of death. She testified in her own behalf, stating that *from May 26, 1924,* (date of medical examination) *until August of that year* the insured did not consult a physician *as far as she knew,* but that during August, 1924, he did consult and was treated by Dr. Kipnis. She did not testify as to the insured's condition of health, or whether or not he had received treatments from physicians, *prior* to the date of said medical examination.

To maintain its affirmative defense of fraud and misrepresentation defendant called as witnesses Dr. Eberhardt, Dr. Kipnis and Dr. Kaplan, and introduced certain records of the Mount Sinai Hospital and other writings. We deem it unnecessary to outline or discuss this voluminous evidence. Suffice it to say that it strongly sustains the allegations of defendant's affidavit of merits in all essential particulars.

In rebuttal plaintiff testified that Dr. Eberhardt conducted the medical examination of the insured at the family home on May 26, 1924, about supper time; that as it progressed she "did not see what the doctor did," as she was in an adjoining room; but that "Mr. Fogle and Mr. Barken" were in the room when the examination was had. She, however, gave no testimony which in any manner contradicted defendant's evidence supporting its affirmative defense.

Thereupon, plaintiff called as a witness Samuel Fogle, He testified that he lived at Wyandotte, Michigan; that he was present at the Koplen home on May 26, 1924, when Dr. Eberhardt examined Samuel Koplen for a life insurance policy; that the examination lasted about 15 minutes; that the doctor "seemed to be in a hurry"; and that he (the witness) overheard conversation between said Koplen and the doctor. He was then asked the question by plaintiff's attorney "Did Dr. Eberhardt ask Mr. Koplen in your presence and hearing this question, 'Have you been under observation or treatment in any hospital, asylum or sanitarium?' Upon objection the court refused to allow the witness to answer the question. Thereupon similar questions were asked the witness as to whether he heard the doctor ask Koplen the three other questions (viz: 8, C., 10, and 11, as contained in the application as above mentioned), but the court also refused to allow the witness to answer them. Plaintiff's attorney then stated that the witness, had he been allowed to answer the questions, would have answered "No" to each of them. And thereupon it was stipulated that "Mr. Barken," then present in court, would answer "No" to the same questions, were he allowed to do so. At the conclusion of all the evidence the court directed the jury to find the issues against plaintiff, which verdict was returned and the judgment in question against plaintiff followed.

The main contentions of plaintiff's counsel are that the court erred (1) in directing a verdict against plain-

tiff at the close of all the evidence, and (2) in refusing to admit the offered testimony in rebuttal of plaintiff's witnesses Fogle and Barken.

On the other hand defendant's counsel contend (1) that the directed verdict was proper because defendant's defense of fraud and misrepresentation in the insured's application was an affirmative one and was sustained by proof and there was no evidence introduced by plaintiff contradicting defendant's evidence on the issue, and (2) that the offered testimony of plaintiff's witnesses, Fogle and Barken, was properly excluded.

Defendant's defense in the present case was an affirmative one. (*Continental Ins. Co. v. Rogers,* 119 Ill. 474, 485; *Guardian Mut. Life Ins. Co. v. Hogan,* 80 Ill. 35, 41; *Piedmont & Arlington Life Ins. Co. v. Ewing,* 92 U. S. 377, 378; *Monahan v. Metropolitan Life Ins. Co.,* 180 Ill. App. 390, 394; *Hamer v. Globe Mut. Life Ins. Co.,* 243 Ill. App. 109, 113.) And, "where evidence of an affirmative defense is offered, as in this case, it is proper to direct a verdict for the defendant, even though all the averments of the declaration are proved, if the evidence of the affirmative defense is not contradicted or explained." (*Wallner v. Chicago Consol. Traction Co.,* 245 Ill. 148, 152; *Helm v. Illinois Commercial Men's Ass'n,* 279 Ill. 570, 575.) And in the present case, there being no admitted evidence offered by plaintiff contradicting or explaining defendant's evidence (which sustained the affirmative defense of fraud and misrepresentation in the insured's application), plaintiff was not entitled to recover and the directed verdict against her was proper. (*Blahofski v. Metropolitan Life Ins. Co.,* 237 Ill. App. 220, 225; *Hranicka v. Prudential Ins. Co.,* 235 Ill. App. 257, 263; *Enright v. Knights of Security,* 253 Ill. 460, 466.) The insured must have known that his answers to the questions in the application were false and untrue. As said in *Crosse v.*

*Knights of Honor,* 254 Ill. 80, 84; "The answers made were material to the risk and did not relate to a matter of opinion or judgment concerning which there might be a mistaken but honest belief."

But plaintiff's counsel contends in substance that, if the offered testimony of the witnesses Fogle and Barken had been admitted, there would have been some evidence by plaintiff tending to contradict or explain defendant's evidence supporting its affirmative defense, thereby requiring the submission of the cause to a jury. To this contention defendant's counsel reply that the offered testimony was not admissible under the pleadings. We think there is substantial merit in defendant counsel's reply contention. In her statement of claim plaintiff set out in full the policy, including Koplen's written application made a part of the policy contract, and alleged that Koplen during his lifetime "did keep, perform and comply with all the terms, conditions and provisions of said policy upon his part to be kept and performed." She thereby affirmed the contract as written, including Koplen's statement over his signature to Part II of the application that each of his answers to the questions therein "is full, complete and true," and that he agrees "that the company believing them to be true shall rely and act upon them." Nowhere in the statement of claim is there any allegation that any of the answers were untrue or that the answers resulted from any fraud practiced by the medical examiner or from any other cause. And after defendant's affidavit of merits was filed, setting forth its affirmative defense as stated, plaintiff did not file any further pleading, or ask leave to amend her statement of claim, alleging any reason or excuse for Koplen having signed said application containing said answers. The rules of the municipal court, in force at the time of the trial, are contained in the present transcript certified by the trial judge. Rule No. 15 (n) provides that "all such

grounds of defense or reply as would raise issues of fact not arising out of the preceding pleadings *must be specifically pleaded,* including *fraud,* . . . estoppel . . . and all other matter *by way of confession and avoidance.''* Under this rule it was incumbent upon plaintiff to file a reply to defendant's affidavit of merits if she desired to put any such matters in issue. When the case went to trial under the existing pleadings, the sole issue was whether Koplen's said answers, material to the risk and relied upon by defendant as being true, were in fact false. And defendant's evidence disclosed without contradiction that they were false. In this connection the recent case of *Metropolitan Life Ins. Co. v. Trunick's Adm'r,* 229 Ky. 173, decided by the court of appeals of Kentucky, 16 S. W. Rep. (2d.) 759, may be referred to. In the opinion the court referred to a prior decision (143 Ky. 488) where a plaintiff, suing upon a life insurance policy, had attempted in rebuttal to show that certain answers appearing in an application were not made by the insured, and where ''the testimony to establish such facts was rejected by the trial court, and that ruling was approved by us solely upon the ground that as a condition precedent to the admissibility of the offered testimony there should be a pleading expressly relying upon such facts.'' And the court, following that decision, said (p. 760):

''The rule is not a harsh one, and is eminently proper in furtherance of the fundamental purpose of proper pleading. That purpose is to inform the adversary litigant of the facts upon which reliance will be made. When it is intended to impeach a written contract or some portion thereof that the opposite party is relying on for his cause of action or defense, it is highly essential that the latter should be informed of such intention and purpose, so that he may prepare himself to meet the issues. The existence of the rule does not mean, as counsel for plaintiff seems to conclude, that

an insurance agent may fraudulently procure the signature of the insured to a falsified application and permanently and unalterably bind him thereby. It only requires that before the insured in such a case may attack the writing which he acknowledgedly signed, he must plead the facts constituting his grounds of attack, and which constitutes no departure from established rules of practice, nor does it have the effect to fasten the fruits of fraud upon the defrauded party without remedy of escape. It only prescribes a method of escape, and which must be pursued in order to be available to the defrauded party."

The decision in the case of *Liverpool & L. & G. Ins. Co. v. Morris,* 79 Ga. 666, 669, is substantially to the same effect. And the municipal court rule, above referred to, is in harmony with these decisions.

And we do not think that the decision in the case of *Tykalowicz v. Metropolitan Life Ins. Co.,* 249 Ill. App. 280, 287, cited by plaintiff's counsel, is to the contrary. In that case the plaintiff, *by a replication* to the company's similar affirmative defense, alleged certain facts which, if proved, would have tended to show that the company was estopped to raise its affirmative defense. In the present case there is nothing in plaintiff's pleadings indicating any waiver of, or estoppel to raise, defendant's affirmative defense, which, if relied upon, must have been *pleaded* as well as proved. (*Feder v. Midland Casualty Co.,* 316 Ill. 552, 559-60; *East St. Louis Lumber Co. v. U. S. Branch of London Assurance Corp.,* 246 Ill. App. 574, 579.)

Furthermore, we do not think that the rejected testimony of the witnesses Fogle and Barken tended to show any mistake as to the insured making the answers as written in the application, as he certified over his own signature that he had read them over. This being so, it was immaterial whether Dr. Eberhardt asked the four questions of the insured. And no testimony was

offered by said witnesses tending to show that Dr. Eberhardt at the time was guilty of any fraudulent conduct toward the insured.

And we do not think that the recent decision of our Supreme Court in *Guter v. Security Benefit Ass'n,* 335 Ill. 174, also cited by plaintiff's counsel, is contrary to our present holdings. In that case the court decided that the testimony offered by the plaintiff in rebuttal tended to show a fraud perpetrated on the insured by the association's examiner, that the plaintiff's replication to the association's pleas, setting forth affirmative defenses, was sufficient to allow said testimony to be introduced, and that the trial court erred in instructing the jury to find the issues for the association. In the present case no replication was filed to the affirmative defense as pleaded by the company, its said defense was proven without contradiction, and the rejected testimony of the witnesses Fogle and Barken did not tend to show any fraud practiced on the insured, or any accident or mistake, at the time he signed said application.

For the reasons indicated we think that the trial court properly instructed the jury at the close of all the evidence to find the issues against the plaintiff. Accordingly, the judgment should be and is affirmed.

*Affirmed.*

BARNES, P. J., and SCANLAN, J., concur.