WEBER, Respondent, vs. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant.

*October 5—November 9, 1954.*

For the appellant there was a brief by *Bloodgood & Passmore* and *John P. Roemer,* all of Milwaukee, and oral argument by *Mr. Roemer.*

For the respondent there was a brief by *Lepp & Phillips* of Kenosha, and oral argument by *Burton Lepp.*

STEINLE, J.   On May 16, 1947, the appellant Insurance Company issued a policy of life insurance upon the life of

respondent, Maurice J. Weber. It was an endowment-plan policy for $15,000 maturing in twelve years or upon prior death, and attached thereto was a total and permanent disability waiver of premiums supplement. The policy specifically provides that the two-year incontestability limitation applicable to the policy does not apply to the supplementary provision granting benefit for total and permanent disability. The controversy concerns only the waiver of premium clause of the policy.

The written application, which is an essential part of the contract between the parties, was signed by Maurice J. Weber at Chicago, Illinois, on April 1, 1947. Included in the application are the following questions and answers:

"15. Have you ever had, or consulted or been treated by a physician or other practitioner for any of the following: Epilepsy, insanity, paralysis, discharging ear, goitre, rheumatism, gout, any drug habit, nervous breakdown, dizziness, heart disease, hemorrhage from the lungs or stomach, consumption or tuberculosis, pleurisy, cancer, tumor, indigestion, stomach or intestinal ulcer, appendicitis, gallstones, kidney stones, bladder, prostate or rectal trouble, varicose veins, sugar in the urine, high blood pressure, syphilis, or any other illness, injury, deformity, physical defect, impairment or infirmity, or any surgical operation?
"Answer: Yes.
"16. Have you ever had, or consulted or been treated by a physician or other practitioner for pain or pressure in the chest, shortness of breath, or palpitation?
"Answer: No.
"17. Have you consulted or been treated by a physician or other practitioner during the past five years?
"Answer: Yes.
"18. Have you ever received, or applied for treatment at, or attended, any hospital, dispensary, sanitarium, cure, or other institution?
"Answer: No.
"If the answer to any or all of questions 15, 16, 17, and 18, is 'Yes,' specify every illness, injury, deformity, or opera-

tion, with dates, duration, severity, results, the names and addresses of any physicians or other practitioners, and hospitals, etc.

"Dermatitis rt. hand 2 wks. ago. Duration 10 days. Was fully recovered. Dr. Siegel of Kenosha, Wis. Unimportant."

The insurance policy, including the attached supplementary provision of waiver of premium, was delivered to Maurice J. Weber in the state of Illinois. Payment of the premium was made by him in that state.

The record indicates that the insured was thirty-eight years of age when he applied for the policy in 1947. In the fall of 1944, he suffered from diarrhea for a week or two, and consulted his family physician, Dr. Nathaniel B. Lans of Chicago, who gave him some medicine. His condition not having improved, Dr. Lans on October 3, 1944, sent him to Grant Hospital in Chicago where an abdominal X ray was made. Immediately thereafter, Dr. Lans advised him that he could find nothing wrong except that he was very nervous and that there was a possibility of ulcerative colitis. The physician prescribed no medication or diet or treatment. Further examination was not suggested. No laboratory tests were made, no specimens were examined. At the trial the insured denied that he at any time observed blood or mucous with reference to the condition. The situation cleared up, and no physician has ever made a positive diagnosis that he had ulcerative colitis. He consulted no other physician during the five-year period preceding the issuance of the policy except Dr. Siegel for dermatitis. On November 12, 1949, the insured was admitted to Columbia Hospital in Milwaukee and underwent an operation for herniated cervical disc. When being prepared for the surgery, a hospital attendant wanted to give him an enema. In an effort to avoid this, Weber told the attendant that such could not be administered to him for reason stated that "I have got colitis." He claims

to have learned that an enema was not to be given to a patient with colitis. In July of 1950, Weber was sent to the Mayo Clinic for a complete examination following the cervical-disc operation. That examination included a barium enema and an abdominal X ray. The report to him was that there was no trace of ulcerative colitis existing or having existed in the past. The insured was permanently disabled due to the cervical-disc condition from the later part of October, 1949, until about March 2, 1951. He gave notice to the insurer of this disability and demanded a refund of premiums paid in amount of $1,857.60, claiming entitlement thereto under the supplementary provision of the policy. After making this claim, Weber was visited by a representative of the insurer. At the trial he admitted that at such visit while discussing his previous history, he told the representative that he was "supposed to have had colitis," and gave the name of the doctor whom he had consulted. The insurer refused to honor the claim. It is Weber's position that at the time of the application for the insurance he had completely forgotten his former treatment by Dr. Lans as well as the X rays at Grant Hospital. He had remembered only the treatment for dermatitis. Dr. Lans at the time of trial was deceased. Prior to 1945 Weber had lived in Chicago and was an executive of a diaper-service business there. At the time of trial he resided in Kenosha and was engaged in the laundry and dry-cleaning business.

A special verdict containing sixteen questions was submitted to the jury. Four separate misrepresentations alleged to have been made by Mr. Weber on his application for the insurance policy were inquired about.

Question 1 read: Did the plaintiff falsely represent to the defendant that he was not afflicted with the disease of ulcerative colitis at any time during the five-year period prior to April 1, 1947?

Question 4 read: Did the plaintiff falsely represent to the defendant that he had not consulted Dr. Lans at any time within the period of five years prior to April 1, 1947?

Question 7 read: Did the plaintiff falsely represent to the defendant that he had not attended Grant Hospital for the purpose of a barium enema and an X ray at any time during the period of five years prior to April 1, 1947?

Question 10 read: Did the plaintiff falsely represent to the defendant that he had not been placed on a diet by Dr. Lans at any time within the period of five years prior to April 1, 1947?

Following each of questions 1, 4, 7, and 10 appeared three subsidiary inquiries. Those which followed questions 4, 7, and 10 are identical in phraseology with those (2, 3, and 13) that followed question 1, excepting that as to numerical references they pertained only to questions 4, 7, and 10, respectively.

Question 2 read: If you answer question 1 "Yes," then answer this question: Was such false representation made by the plaintiff with actual intent to deceive the defendant?

Question 3 read: If you answer questions 1 and 2 "Yes," then answer this question: Did the defendant rely thereon in issuing the policy of insurance?

Question 13 read: If you answer both questions 1 and 2 "Yes," then answer this: Did such false representation materially affect the acceptance of the risk or hazard assumed by the defendant?

The jury answered "No" to questions 1 and 10. The court answered questions 4 and 7, "Yes." The jury answered "No" to questions immediately following questions 4 and 7 inquiring as to the existence of an intent on the part of Weber to deceive the insurer. All other questions of the special verdict were unanswered by the jury.

The jury's verdict consequently resulted in a determination that Weber had not falsely represented that he was not

afflicted with ulcerative colitis, and had not falsely represented that he had not been placed on a diet within five years before making the application for the policy. It was determined that Weber had falsely represented that he had not consulted Dr. Lans and that he had falsely represented that he had not attended Grant Hospital for the X ray, within five years before the application was signed. It was further determined that Weber's false statements in such respects, however, were not made with intent to deceive. The jury made no determination as to materiality of risk or hazard.

Since it was in Illinois that the application for the policy was made, the delivery effected, and the premium paid, under well-established rules, the substantive law of that state governs as regards the contract. Both parties so agreed, and at the trial the contract was treated in such manner by the court.

The principal consideration upon this appeal involves an interpretation of the law of the state of Illinois regarding the character of a misrepresentation sufficient to avoid an insurance contract. It is contended by the appellant that when it is established that a representation in an application for life insurance is false and material, such fact constitutes a sufficient defense to a suit on a policy, without proof of an intent to deceive. The respondent maintains that no policy may be avoided by an insurer without proper finding that the false representation was made with intent to deceive *and* that such representation materially affected the acceptance of the risk or materially affected the hazard assumed by the company.

As to their respective positions, both parties rely upon the following provisions appearing in the Insurance Code of Illinois. Ill. Rev. Stats., ch. 73, sec. 766 (Jones Ill. Stats. Ann. 66.829), adopted June 29, 1937:

"No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of in-

surance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty, or condition shall have been stated in the policy or indorsement or rider attached thereto, or in the written application therefor, of which a copy is attached to or indorsed on the policy, and made a part thereof. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company. This section shall not apply to policies of marine or transportation insurance."

Both parties agree that the latest construction of this statute by an appellate court of the state of Illinois is contained in the case of *Hamberg v. Mutual Life Ins. Co.* (1944), 322 Ill. App. 138, 54 N. E. (2d) 227, decided by the appellate court of Illinois, first district, first division, on April 3, 1944. Upon this appeal, the appellant, in support of its position, also relies upon *Jessen v. Aetna Life Ins. Co.* (7th Cir. 1954), 209 Fed. (2d) 453, wherein the Illinois statute in question was construed.

However, it is considered that upon the basis of comity we are bound to recognize and follow only the decision in *Hamberg v. Mutual Life Ins. Co., supra.* If decisions of the courts of the state in which the statute exists are offered in evidence, the interpretation placed by the courts of that state will be followed at the forum. Restatement, Conflict of Laws, p. 737, sec. 621, comment *c.* In a matter of construction the state court's determination as to the meaning of a state statute prevails. *Estate of Ogden* (1932), 209 Wis. 162, 169, 244 N. W. 571. In cases not involving federal questions, as where state . . . statutes are to be construed, state courts are not required to follow federal court decisions. . . . 21 C. J. S., Courts, p. 360, sec. 205.

Counsel for the parties are not able to agree as to the purport of the decision in *Hamberg v. Mutual Life Ins. Co.,*

*supra.* The decision is based upon two opinions,—the opinion proper and a special opinion. Counsel for appellant in his brief observes that: "Although this section of the statutes seems to be clear and free from ambiguity, its interpretation . . . is confused."

In *Jessen v. Aetna Life Ins. Co., supra,* the court said (p. 456):

"*Hamberg v. Mutual Life Ins. Co.* 322 Ill. App. 138, 54 N. E. (2d) 227, the only opinion of an appellate court purporting to construe the quoted language [of the statute] resulted in a legal incongruity."

The federal court also referred to the opinion in the *Hamberg Case* as a paradox. The opinion proper indicates that the insured stated that he had not consulted a physician, that he had never had abnormal blood pressure, and that no sugar or other abnormality had ever been found in his urine. These statements were false. The plaintiff, suing as a beneficiary under the policy, maintained that the statements were not "knowingly" false, and were not made "with intent to deceive." The appellate court in its opinion declared that the undisputed evidence showed that with one possible exception, all of the statements were known to be false when the insured made them. However, the court said (p. 143):

"It is unnecessary to make a holding as to whether the misrepresentations were made with actual intent to deceive."

The court found that as a matter of law the misrepresentations materially affected the risk as well as the hazard assumed by the company. The court decided that the insurer was entitled to avoid the policy. In its construction of the statute as applicable to the facts of the case, the court at page 142 said:

"[The statute] after stating that no misrepresentation, false warranty, or breach of condition shall defeat or avoid a

policy unless stated in the policy or indorsement or rider attached thereto, or, in a written application therefor, of which a copy is attached to or indorsed on the policy and made a part thereof, provides: 'No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive *or* [italics supplied] materially affects either the acceptance of the risk or the hazard assumed by the company.' *The language used is clear and unambiguous.* [Italics supplied.] The section places representations and warranties on the same footing and provides, alternatively, that before a misrepresentation or false warranty shall defeat or avoid a policy (a) it shall have been made with actual intent to deceive, or (b) it shall materially affect the acceptance of the risk, or (c) it shall materially affect the hazard assumed by the company. *Anderson v. John Hancock Life Ins. Co.,* 316 Ill. App. 338, [45 N. E. (2d) 39]; Illinois Insurance Code Annotated, page 285; *Krajewski v. Western & Southern Life Ins. Co.,* 241 Mich. 396, [217 N. W. 62]; *North American Life Assur. Co. v. Jones,* 287 Mich. 298, [283 N. W. 587]; *Rainger v. Boston Mut. Life Ass'n,* 167 Mass. 109, [44 N. E. 1088]; *Johnson v. National Life Ins. Co.,* 123 Minn. 453, [144 N. W. 218; Ann. Cas. 1915A 458]; *Mutual Life Ins. Co. v. Allen,* 174 Ala. 511, [56 So. 568]; *Security Life Ins. Co. of America v. Black's Adm'r,* 190 Ky. 23, [226 S. W. 355]."

However, in a special concurring opinion, two of the three justices of the court, while agreeing with the result of the decision as declared in the opinion proper of the case (p. 144), "for the reason that the undisputed evidence shows that the answers given by the assured to the questions asked of him were knowingly false," did not agree with the construction given (as set forth above) to the statute in question. They expressed their opinion that the word *"or"* after the word "deceived" should be construed to mean *"and."*

Obviously, these positions are not reconcilable. In the opinion proper it is considered that the statutory clauses are disjunctive in character and that either a showing of false

representation with intent to deceive *or* one materially affecting the acceptance of the risk or materially affecting the hazard assumed, is sufficient to avoid the policy. Under the view expressed in the special opinion both of the requirements—intent to deceive and materiality as to risk or hazard—for avoidance of the contract, must occur, and that a misrepresentation including only one of these elements is insufficient.

In our view the opinion of the two justices with reference to this matter was not decisive of the issues presented. It was dicta. In the opinion proper the issues were determined on the basis that one or the other of the alternative elements, necessary to avoid the contract, existed. As the decision stands it holds that since there was a finding that one of the elements existed, that was sufficient to avoid the policy.

We consider that under the ruling of this case the statute has been interpreted to mean that a policy may be avoided when the false statement has either been made with actual intent to deceive or in the alternative, when it materially affected the acceptance of the risk or hazard assumed by the company.

In the case at bar it is also contended on behalf of the appellant that the statements of the insured found by the court to be false, were as a matter of law material to the acceptance of the risk or hazard assumed by the company. The latest expression by the supreme court of Illinois with reference to that subject appears in *Marshall v. Metropolitan Life Ins. Co.* (1950), 405 Ill. 90, 90 N. E. (2d) 194. In the opinion of that case after reciting a factual situation comparable to that before us here, the court said (p. 95) :

"The crucial question presented as to the first policy is whether the failure of the insured to declare the illness of December 30, 1943, was, as a matter of law, a material misrepresentation so as to avoid the policies."

The court determined that the materiality of the misrepresentation was for the jury, and noted that (p. 98) :

"An undisclosed single visit to a doctor for an undiagnosed complaint was held to present a jury question as to materiality in *Zogg v. Bankers' Life Co.,* [4 Cir.], 62 Fed. (2d) 575. Failure to disclose chills and a visit to a hospital for a check-up was held immaterial to the risk in *Aetna Life Ins. Co. v. Hub Hosiery Mills,* [1 Cir.], 170 Fed. (2d) 547. In *Hancock v. National Council of Knights of Security,* 303 Ill. 66, [135 N. E. 33, 34], this court said, 'whether statements of an application made as incidental and inducement to a contract are material may be the subject of evidence and raise questions of fact unless they are of such a nature that all persons would agree that they are or are not material.' In *Weinstein v. Metropolitan Life Ins. Co.,* 389 Ill. 571, [60 N. E. (2d) 207], it was held that the materiality of misrepresentations in an insurance application is a question of fact for the jury. Here, there was evidence from which the jury could reasonably conclude the misrepresentation was immaterial either to the risk or to the company's acceptance of it and therefore it was properly left to the jury."

On the basis of this authority we consider that under the law of Illinois the question of materiality as to risk or hazard in circumstances as in the case at bar is for the jury. The jury in this case did not determine materiality. It is plain that the trial court in its submission of the case to the jury, and in its determination of motions after verdict, and in rendering the judgment, treated the situation as falling within the rule announced by the two justices in *Hamberg v. Mutual Life Ins. Co., supra,* to the effect that the elements of intent to deceive and materiality as to risk or hazard, as referred to in the Illinois statute, are not in the alternative. This was error. In view of such treatment it appears to us that the real controversy has not been fully tried. We consider that there must be a new trial. In accordance with the authority of sec. 251.09, Stats., we direct that the judgment be reversed and

that a new trial be granted for the reason that the real controversy has not been tried. While there are other matters raised upon this appeal, including appellant's challenge to rulings upon evidence, we consider that it is not necessary to pass upon the same in view of the conclusion that there must be a new trial.

*By the Court.*—Judgment reversed, cause remanded with directions to set aside the judgment entered below and to grant a new trial.