Harry Campbell, Guardian of Estate of Gerald Dennis Campbell, a Minor, Plaintiff-Appellee, v. Prudential Insurance Company of America, Defendant-Appellant.

Gen. No. 47,237.

First District, Third Division.
January 15, 1958.
Released for publication February 10, 1958.

Peterson, Lowry, Rall, Barber & Ross (Owen Rall, and William A. Cannon, of counsel) for appellant, Prudential Insurance Company of America.

Askow and Stevens (Irwin J. Askow, and Richard James Stevens, of counsel) for plaintiff-appellee.

PRESIDING JUSTICE BURKE delivered the opinion of the court.

The Prudential Insurance Company of America issued to Lloyd J. Campbell two Endowment At Age 65 Years policies on November 9, 1953 and May 17, 1954, for $1,000 and $750, respectively, at a time when the insured was 42 years of age. Both policies contained provisions for payment of the principal

amounts in the event of the death of the insured. He died on July 6, 1954. Gerald Campbell, a minor, the beneficiary, by his guardian, sued the insurer. A trial resulted in a verdict and judgment for $1,750, to reverse which the defendant appeals.

■■ Defendant's theory is that the insured's confinement in the Cook County Hospital for one month in 1948, his operation there for an abscessed peptic ulcer and his subsequent recurrent attacks were material to the acceptance of the risk, and the evidence in this respect being neither contradicted nor denied, no question of fact was presented for submission to the jury. Defendant maintains that it was entitled to a directed verdict for the reason that its affirmative defense of material misrepresentations was proved and not denied by any evidence on plaintiff's behalf. Plaintiff's theory of the case is that there were substantial controversial questions of fact for submission to the jury: (1) whether misrepresentations as to an ulcer operation occurring more than five years prior to the applications for the policies were material to the risks, and (2) whether such misrepresentations were made with intent to deceive the insurance company, and that the trial court correctly submitted the questions of fact to the jury. In order to defeat the policies sued upon it was necessary for the defendant to prove its affirmative defense of misrepresentations at the time of the execution of the applications. Where evidence of an affirmative defense is offered it is proper to direct a verdict for the defendant even though all averments of the complaint are proved, if the evidence of the affirmative defense is not contradicted or explained. Wallner v. Chicago Consol. Traction Co., 245 Ill. 148, 152; Cohen v. New York Life Ins. Co., 256 Ill. App. 345; Hassey v. A. C. Allyn & Co., 306 Ill. App. 37, 42.

The insured had been a patient at the Cook County Hospital from August 18 to September 18, 1948, during

which period Dr. Morris T. Friedell performed an operation for an abscessed duodenal ulcer. Dr. Friedell testified that he performed what is called a gastro-jejunostomy, which is the connection of the stomach to the small intestine, and that its purpose is to bypass the first portion of the small intestine which is called the duodenum. He also stated that the second portion of the operation is known as a vagotomy, which consists of dividing and removing a small portion of two large nerves and their branches which come into the stomach. The witness stated that the patient's pathology showed a subacute inflammatory mass the size of an orange over the superior aspect of the first portion of the duodenum. The pathology was considered serious. The hospital records show the patient "doing very well" and indicated the patient was recovering very well from the operation. The witness who performed the operation and who has performed two or three thousand similar operations, testified that there is a fairly high percentage of cures following such an operation, and that insured's condition was as good as he would like to see it after the operation. The witness also stated that from the history in the Cook County Hospital record it appeared that the patient in 1943 had been operated at St. Mary's Hospital for a perforated peptic ulcer. This history showed that in June, 1947, the patient began to vomit, became weak and was given seven transfusions at St. Mary's Hospital. Preceding his admission to the Cook County Hospital the patient lost 30 pounds in weight and had recurrent vomitting episodes every night.

In answer to certain health questions in the applications the insured denied having had any illness or operation within 10 years preceding the application dates, also that he had not consulted or had been treated by a doctor within five years preceding the dates, as well as denying that he had ever been confined to a hospital or ever had ulcers or lost time from

68

work on account of illness. In answer to the question in the applications as to whether the applicant had lost time from work on account of illness during the preceding year applicant answered: "No." The insured had been employed regularly by Cribben & Sexton Company as foreman in the japanning shop for 28 years up to his death. He worked a full week when work was available and performed his work properly. He appeared to be in good health except for the periods when he was off for illness. He worked from 90 per cent to 92 per cent of the time. For a period of a year prior to his death the insured visited at the home of his brother about twice a month, walking part of the way. He had occasional meals at his brother's home. There was nothing about his eating that attracted attention. The insured died on July 6, 1954. The coroner's certificate of death, admitted into evidence over defendant's objection, gave the cause of death as coronary thrombosis, with a further statement that the interval between onset and death was "Unknown." There had been no previous history of coronary thrombosis or any heart condition anywhere in the insured's medical history.

The records of insured's employer show that in 1953 and 1954 he had been off work on several occasions. One period of absence was from September 7, 1953 to September 28, 1953, another from October 26, 1953 to November 16, 1953, and still another from January 20, 1954 to February 22, 1954. In these cases medical statements by the insured's physician were given the employer by the insured. These indicated that insured's absence was caused by a possible recurrent peptic ulcer and gastrointestinal disturbance. It also appears that insured had been off work on other occasions. The witness who testified as to the work records stated that since 1943 insured's absences were twice the average. Dr. Leslie Schwartz

testified that he had seen the insured on several occasions in 1952 and saw him at his home on March 16, 1953, on which occasion insured complained of loss of weight, vomitting and abdominal distress. He was seen again by Dr. Schwartz on September 21, 1953, November 6, 1953 and January 29, 1954, with similar complaints. On the latter date Dr. Schwartz suggested hospitalization, which insured refused. Dr. Martin Sternback testified he saw the insured in March or April, 1954, at his home and may have seen him on three or four occasions during this period. He thought insured had pneumonia, prescribed an antibiotic and suggested that insured be hospitalized for further tests. During this time insured complained of epigastric distress and also thought he has passed some gravel in his urine. Dr. Sternback then told him that he may have passed a kidney stone and advised X-ray study.

Dr. Clifton L. Reeder, Medical Director of the Continental Assurance Company, testified that in connection with his duties as Medical Director he passes on applications for life insurance; that he is familiar with the type of applications used by various companies, and that the correct answers to questions propounded become very important in evaluating the risk for the reason that the company is dependent upon the applicant's answers for the evaluation of health history. The history of a previous operation is most important for the reason that doctors do not always inform their patients of their true condition. Correct information affords an opportunity to inquire as to the true state of the applicant's health. He also testified that an abscessed peptic ulcer would infer a probable perforation through the wall of the stomach, and from an insurance underwriting standpoint an applicant having had an operation for an abscessed peptic ulcer is not an insurable risk, also that it was the practice of

70

insurance companies generally during 1948 and subsequent thereto to reject an applicant who had an ulcer operation with subsequent complaints of epigastric distress. This witness also testified that the answers "No" to questions inquiring as to whether the applicant within a fixed period of time was operated, received medical treatment at a dispensary or ever had an ulcer, are significant, and if the answers had been "Yes" to these questions, a medical examination would have been required, and in addition thereto inquiry would have been made of the attending physicians. Inquiry would also be made if the applicant answered "Yes" to the question as to whether he had been absent from work on account of illness during the preceding year. Dr. Reeder testified that if there is a peptic ulcer condition and a successful gastrojejunostomy, the insurance company frequently underwrites the risk, and that if the applicant does not apply for insurance until five years after surgery and had no trouble whatsoever from the time of the operation, the insurance company would take him at the regular premium. The witness also testified that insurance companies always have the right to request a medical examination before issuing a policy of insurance, and that if a person dies and has the appearance of a coronary thrombosis you may be sure that it was not death from a peptic ulcer.

The parties discuss Section 154 of the Insurance Code of 1937, (Sec. 766, Ch. 73, Ill. Rev. Stat. 1957) which, after providing that a misrepresentation to defeat a policy must be stated in the policy or endorsement or rider attached thereto or in the written application therefor, of which a copy is attached to or endorsed on the policy and made a part thereof, continues as follows: "No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or

materially affects either the acceptance of the risk or the hazard assumed by the company." A photostatic copy of the application for each policy and the applicant's certification that the answers made by him were complete and true was attached to each original policy and delivered to the applicant. The trial judge, in giving an instruction at the request of the plaintiff, in effect, took the position that the burden is upon the insurance company to prove by competent evidence that a false answer in the application for insurance was material to the risk and knowingly was made with intent to deceive and for the purpose of procuring the issuance of the policies. Plaintiff says that the case of La Penta v. Mutual Trust Life Ins. Co., 4 Ill.App.2d 60, holds that the insurer must prove not only that the misrepresentations were false and material but also were made with actual intent to deceive. Plaintiff considers the case at bar stronger than the La Penta case in that the insurance applied for by Lloyd Campbell and issued to him was not ordinary life insurance but endowment insurance at age 65 years, pointing out that if the insured had any actual intent to deceive or defraud the insurer, knowing that he was suffering from a serious illness, he would take out term insurance or ordinary life insurance, and that his act in taking out endowment insurance shows that he believed he had a reasonable chance to attain the age of 65 years. Plaintiff asserts that the five years lapse of time between the successful gastrojejunostomy and the date of the applications might well cause the insured to reasonably believe that the operation and the conditions for which he was subsequently treated were of no consequence for the insurance application. Plaintiff says that the record is not so bare of evidence in his favor on this issue as to entitle the defendant to a directed verdict.

We do not consider the factual situation in the La Penta case "almost identical with the case at bar,"

as contended by the plaintiff. To the extent that the La Penta case holds that the word "or" as used in Section 154 should be construed to mean "and" it is contrary to the language of the statute and to the cases interpreting the language of similar acts. In Hamberg v. Mut. Life Ins. Co., 322 Ill. App. 138, a judgment for the plaintiff was reversed on appeal and judgment entered in favor of the defendant. A medical examination by insured's physician about two months prior to the application for insurance disclosed evidence of abnormal blood pressure and pus cells in the urine. This information was not given in the application. The patient was advised to return within a few days but did not do so until about three months after the issuance of the policy, when he again saw his family physician and was informed that the symptoms found were indicative of disease of the heart. A cardiogram examination about one month later showed evidence of myocardial damage. The insured shortly thereafter was found dead in his automobile and the cause of death was given as chronic myocarditis. On the trial the acting medical referee of defendant testified without contradiction that had the questions been answered truthfully the defendant would not have issued the policy, and that the answers to the questions were material to the risk that the defendant was asked to assume. The court said (143):

"It is unnecessary to make a holding as to whether the misrepresentations were made with actual intent to deceive. Recovery must be denied if any of the misrepresentations materially affected the acceptance of the risk or the hazards assumed by the company. . . . The trial court should have held as a matter of law that the policy was avoided because of misrepresentations which materially affected acceptance of the risk, as well as the hazards assumed by the company."

73

In Jessen v. Aetna Life Ins. Co., 209 F.2d 453, rendered subsequent to the Hamberg and La Penta opinions, Judge Walter C. Lindley, speaking for the court, points out that in the Hamberg case the two justices concurring in the result express the opinion that Section 154 should be construed in the conjunctive, and thus presents the paradox of a court opinion being rendered by minority vote. The opinion by Judge Lindley concludes that "the better reasoned Illinois decisions support defendant's construction of the statute to the effect that proof that a misrepresentation is false and material constitutes a sufficient defense without proof of intent to deceive." The case of Weber v. John Hancock Mut. Life Ins. Co., 267 Wis. 647, 66 N.W.2d 672, decided under Illinois law, discusses at some length the opinions in the Hamberg and Jessen cases and concludes (66 N. W. 678):

"We consider that under the ruling of this case the statute has been interpreted to mean that a policy may be avoided when the false statement has either been made with actual intent to deceive or in the alternative, when it materially affected the acceptance of the risk or hazard assumed by the company."

Provisions similar to those in Section 154 of the Insurance Code are contained in the insurance codes of New Hampshire, North Carolina, North Dakota, Tennessee and Wisconsin, and the courts in those states have held that misrepresentations in an application which materially affect the accceptance of the risk are sufficient to avoid the policy without proof of intent to deceive. We conclude that the rule announced in the Hamberg case and discussed in the Jessen and Weber cases states the proper construction of the language quoted in Section 154 of the Insurance Code, and that an insurer who proves that a misrepresentation made to it was material is not also required to prove that the misrepresentation was made

74

by the applicant with the specific intent to deceive the insurer.

■ We are of the opinion that the undisputed evidence shows that the applicant's misrepresentations were material and we hold that it was not necessary for defendant also to prove that the misrepresentations were made with actual intent to deceive. Plaintiff states that the operation for peptic ulcer was performed more than 5 years prior to the application for the $1,000 policy and more than 5½ years prior to the application for the $750 policy; that the physician who performed the operation testified that the insured's condition was as good as he would like to see it after the operation; that the hospital records show that the patient was "doing very well"; that there is a fairly high percentage of cures following such an operation and argues that on the testimony of defendant's expert witness there is evidence, taken in its most favorable intendments, to support plaintiff's contention that the inaccurate answers to the questions concerning the operation and the peptic ulcers were not material misrepresentations; and that the "minor ailments" which the insured had from August, 1952 to January, 1954 might well have been considered by the jury to be of no consequence and to indicate that insured had "no trouble whatsoever" from the time of his operation. The operation for the peptic ulcer was performed on September 7, 1948. The evidence of his first loss of time from his work due to "possible recurrent peptic ulcer" shows an absence from September 7, 1953 to September 28, 1953. This was five years after the operation. Dr. Leslie Schwartz testified that he examined the applicant on March 16, 1953, and thought at that time from the symptoms that applicant had a recurrence of a peptic ulcer and was treated at that time with Antispasmin for the purpose of relieving his epigastric distress. Clearly, the

75

■■■■■■■■■■■■■■■■

applicant suffered a recurrence after his operation for peptic ulcer within 5 years after the operation. He was diagnosed to have a possible recurrence of peptic ulcer not only in March, 1953, but also on three different occasions commencing September 7, 1953 and ending February 22, 1954, when he lost on each of the three occasions three or four weeks from his work on account of recurrent peptic ulcer.

None of the facts in the case overcome the uncontradicted testimony as to the seriousness of the applicant's condition resulting from his peptic ulcer, the operation therefor and the recurrence thereof. We are satisfied that the defendant was entitled to a directed verdict for the reason that its affirmative defense of material misrepresentation was proved and not denied by any evidence.

■■ We have held that the undisputed evidence establishes that the applicant's misrepresentations were material and that it was not necessary to prove that the misrepresentations were made with an actual intent to deceive. We are satisfied, however, that the only reasonable inference to be drawn from the undisputed evidence is that the applicant intended to deceive the defendant. Fraudulent intent may be established by appropriate inference from overt acts.

The judgment of the Municipal Court of Chicago is reversed and the cause is remanded with directions to enter judgment for the defendant and against the plaintiff.

Judgment reversed and cause remanded with directions.

FRIEND, J., concurs.

BRYANT, J., dissents.

It is my opinion that the verdict of the jury and the judgment of the court should be affirmed. The

76

position taken by the trial judge, as set forth in the majority opinion, "that the burden is upon the insurance company to prove by competent evidence that a false answer in the application for insurance was material to the risk and knowingly was made with intent to deceive and for the purpose of procuring the issuance of the policy," is, in my opinion, a correct statement of the law. It is also my opinion that there were questions of fact which precluded the direction of a verdict.

It is true that Mr. Justice Niemeyer in delivering the opinion of the court in the case of Hamberg v. Mutual Life Ins. Co., 322 Ill. App. 138 (decided in 1944), used the language quoted in the majority opinion. However, Mr. Presiding Justice O'Connor specially concurred and specifically disagreed with the principle enunciated in the quotation mentioned above, and said that in the construction of the section of the Insurance Code here involved, being section 154 (Ill. Rev. Stats. 1955, chap. 73, par. 766), the word "or" after the word "deceive" should be construed to mean "and," and in this special concurring opinion Mr. Justice Matchett concurred for the same reasons. Thus, although the quotation in the majority opinion here is from the opinion of the court, the majority of the court did not agree with that interpretation. I also note that Mr. Presiding Justice O'Connor in that opinion cited with approval the article of Professor Harold C. Havighurst appearing in 32 Ill. Law Rev. 391, and particularly that part relating to this section of the Insurance Code, beginning on page 402. The article appears to have been cogently reasoned and written, and its citation with approval by the majority of the court in the Hamberg case was entirely warranted.

I also note that in the case of Mid-States Ins. Co. v. Brandon, 340 Ill. App. 470, where the opinion was

written by Mr. Presiding Justice Lewe and was concurred in by Justices Burke and Kiley, the court said, in quoting the decision in the Hamberg case, that in that case "this court in construing the foregoing statute held that the word 'or' after the word 'deceive' should be construed to mean 'and.'" Both of these cases are cited as authorities in an article by Chase M. Smith on Automobile Insurance, 42 Ill. Bar Journal 146, at 148.

In the case of La Penta v. Mut. Trust Life Ins. Co., 4 Ill.App.2d 60, where Mr. Justice McCormick delivered the opinion of the court and Mr. Presiding Justice Schwartz and Mr. Justice Robson concurred, the court discussed this section of the Insurance Code, being section 154, and quoted with approval the special concurring opinions of Mr. Presiding Justice O'Connor and Mr. Justice Matchett and cited the fact that this construction had been approved in the case of Mid-States Ins. Co. v. Brandon, supra, and again accepted their earlier interpretation.

Entirely independent of the factual situation in the instant case, it would seem highly incredible to me that it was intended that a misrepresentation which could "materially affect either the acceptance of the risk or the hazard assumed by the company" but which was made entirely inadvertently by the applicant, without any knowledge of what was his actual condition and without the slightest idea of deceiving the insurance company, could by itself be sufficient to void the insurance policy; and, on the other hand, it would seem equally preposterous that a misrepresentation or false warranty which was "made with actual intent to deceive" and with knowledge of its falsity, but which had no materiality upon the acceptance of the risk or the hazard assumed by the policy, could be grounds to deprive the insured of the benefits of his contract. The provisions set forth in

this section of the statute are so analogous to representations in other fraudulent transactions, where they must be false, knowingly made with intent to deceive, material to the action to be taken and relied upon, that to hold them to be disjunctive and not necessarily concurrent would create an anomalous situation.

I see no reason for disturbing the law as interpreted by this court since 1944 in regard to the interpretation of section 154 of the Insurance Code, and, in my opinion, to give the section any other interpretation would be in derogation of the rights of the insured, as so correctly pointed out in Professor Havighurst's article and the ensuing decisions of this court.