**AMERICAN INDEMNITY COMPANY,**
Plaintiff,

v.

**Ernest ELESPURU, Sr.; Dorothy Elespuru; Ernest Don Elespuru, Jr.; Donald Smith, Guardian Ad Litem for Janet Smith; William F. Johnig, Guardian of Donald A. Larson; Ray Freemen; Steve H. Fuller; and Larry A. Lopuch, Defendants.**

Civ. No. 2799.

United States District Court
D. Montana,
Great Falls Division.

Aug. 14, 1969.

As Amended Aug. 18, 1969.

Alexander, Kuenning & Hall, and Paul D. Miller, Great Falls, Mont., for plaintiff.

Jardine, Stephenson, Blewett & Weaver, and John D. Stephenson, Jr., Great Falls, Mont., for defendants, Donald Smith and William F. Johnig.

OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

Plaintiff seeks a declaration of rights.

In separate findings the Court has found that an agent of the plaintiff, on March 15, 1967 made an oral binder insuring an automobile. A premium was paid and an application taken. The application contained non-fraudulent mis-

statements as to the driving history of one insured which were material to the acceptance of the risk and to the hazard assumed by the plaintiff. The agent of the insurer would not have bound the coverage had the true facts been stated. When plaintiff discovered the true facts it refused to accept the risk, and by letter dated March 31, 1967 advised its agent of that fact. On the same day the car was involved in an accident. Plaintiff had no notice of the accident at the time it sent the letter refusing the risk. The agent received the letter and advice of the accident on the same day. Under these circumstances does the policy cover the claims arising out of the accident?

The applicable Montana law is contained in §§ 40–3713, 40–3717 and 40–3725, R.C.M.1947.[1]

The policy which would have issued had plaintiff accepted the risk contained this language:

"DECLARATIONS. By acceptance of this policy, the insured named in Item 1 of the declarations agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of the agents relating to this insurance." (Sec. 17 of Policy Conditions)

Defendants, relying on § 40–3726, R.C.M.1947, urge that the language of Section 17 quoted above, became one of the terms of the binder under the rule announced in Harris v. State Farm Mutual Automobile Insurance Company, 232 F.2d 532 (6 Cir. 1956) and Universal Underwriters Ins. Co. v. Snyder, 81 Nev. 315, 402 P.2d 483 (1965) and that the only representations upon which plaintiff may rely, are those which would have been incorporated in the declarations section of the policy to be issued. The declarations of that policy do not refer to the driving history of the insured.

If it be assumed that section 17 is one of the terms of the policy which, by reason of § 40–3726, must be incorporated in the binder,[2] and even if the court

---

1. "All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

  (a) Fraudulent; or

  (b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

  (c) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract in as large an amount, or at the same premium or rate, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise." § 40–3713, R.C.M.1947.

"The policy, when issued, shall contain the entire contract between the parties, and neither the insurer or any agent or representative thereof, nor any person insured thereunder, shall make any agreement as to the insurance which is not plainly expressed in the policy. This provision shall not be deemed to prohibit the modification of a policy, after issuance, by written rider or endorsement duly issued by the insurer." § 40–3717, R.C.M.1947.

"(1) Binders or other contracts for temporary insurance may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable endorsements as are designated in the binder, except as superseded by the clear and express terms of the binder.

(2) No binder shall be valid beyond the issuance of the policy with respect to which it was given, or beyond ninety days from its effective date, whichever period is the shorter.

(3) If the policy has not been issued a binder may be extended or renewed beyond such ninety days with the written approval of the insurer.

(4) This section shall not apply to life or disability insurances." § 40–3726, R. C.M.1947.

2. It may be that the effectiveness of section 17 is conditioned on the acceptance by the insured of the policy.

should go so far as to hold that the section on Declarations is a term of the policy which the law incorporates in the binder, and that the matter which would have been inserted in the blanks in the declaration section of the policy, if issued, is likewise a term of the policy and the binder, the court is not persuaded that the binder should then be interpreted so as to make unavailable to the insurer misstatements in the application. In the *Harris* and *Universal Underwriters* cases, supra the policies had been issued, and there is substantial reason to hold that the language of section 17 has the effect of integrating the contract and neutralizing any representations not contained in the policy itself. Those reasons do not apply in the case of the binder.

The practice of the plaintiff to examine the risk before it accepted it on a more or less permanent basis was followed in this case.

" * * * The purpose of a binder is to provide temporary insurance pending an inquiry by the insurer as to the character of the risk and to take the place of a policy until the latter can be issued." 1 Couch on Insurance 2nd, § 14:26 (1959). See also 1 Cooley's Briefs on Insurance, pp. 809–815 (1927)

Generally by the time a policy issues, the insurer has examined the risk or at least had an opportunity to examine it. When that is true it may well be that the insurer, by specifying certain declarations in the written contract, does bar itself from relying on others. When the binder was given, the insurer's agent in this case had no information other than that contained in the application, and it was on the faith of that information that the binder was given. The court here cannot say of the binder as did the court in *Harris* of the policy:

"By the terms of the insurance contract, the policy was issued 'in reliance upon the truth of * * * representations' set forth in the policy, and not upon statements in the application." *Harris* supra, 232 F.2d at p. 537.

The fact is that the company did not, when in possession of the truth, issue the policy and that the agent, if in possession of the truth, would not have given the binder. It would be completely artificial to hold that section 17 of a policy, which was never issued because plaintiff learned of the falsity of the statements in the application, prevents plaintiff from vitiating an oral contract which would not itself have been made if the agent had known of the falsity of the same statements.

■ The problem remains, what is the effect of the misstatements upon the oral binder? There is no ambiguity in the language of § 40–3713 making nonfraudulent representations of the kind found here a ground for avoidance of a policy.[3] § 40–3713 uses the word "policy" and it may be that technically a binder is not a policy. Both are, how-

---

3. "Provisions similar to those in Section 154 of the Insurance Code are contained in the insurance codes of New Hampshire, North Carolina, North Dakota, Tennessee and Wisconsin, and the courts in those states have held that misrepresentations in an application which materially affect the acceptance of the risk are sufficient to avoid the policy without proof of intent to deceive. We conclude that the rule announced in the Hamberg case [Hamberg v. Mutual Life Ins. Co., 322 Ill.App. 138, 54 N.E.2d 227.] and discussed in the Jessen [Jessen v. Aetna Life Ins. Co., 7 Cir., 209 F.2d 453.] and Weber [Weber v. John Hancock Mutual Life Ins. Co., 267 Wis. 647, 66 N.W.2d 672.] cases states the proper construction of the language quoted in Section 154 of the Insurance Code, and that an insurer who proves that a misrepresentation made to it was material is not also required to prove that the misrepresentation was made by the applicant with the specific intent to deceive the insurer." Campbell v. Prudential Insurance Co. of America, 16 Ill.App.2d 65, 147 N.E.2d 404, 409 (1958).

The cases of Montana Auto Finance Corp. v. Federal Surety Co., 85 Mont. 149, 278 P. 116 (1929) and Pelican v. Mutual Life Ins. Co., 44 Mont. 277, 119 P. 778 (1911) reach a contrary result, but those cases were decided on substantially different statutes.

ever, contracts of insurance and since the Legislature has indicated the policy of this state with respect to permanent contracts of insurance, there seems to be no reason why the same policy should not be applied to temporary insurance contracts.

This opinion and the findings of fact constitute the findings of fact and conclusions of law.

Plaintiff will prepare, in accordance with Rule 11 of the Rules of this Court, a judgment declaring that plaintiff is not liable under the oral contract of insurance. Plaintiff will in the judgment indicate the disposition of the case as to the defendants who did not participate in the trial of this cause.